1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

11   JEHAN ZEB MIR,                        Case No.:  12–cv–2340–GPC–DHB
12                           Plaintiff,    **ORDER GRANTING DEFENDANTS'**
13   v.                                    **MOTION TO DISMISS**
14   KIMBERLY KIRCHMEYER et al.,           [ECF No. 131]
15                           Defendants.
16

17        Presently before the Court is a motion to dismiss Plaintiff Jehan Zeb Mir's
18   ("Plaintiff's") Fourth Amended Complaint ("FAC") filed by Defendants Kimberly
19   Kirchmeyer, Linda Whitney, Sharon Levine, M.D., David Serrano Sewell, Dev GnanaDev,
20   M.D., Denise Pines, Michelle Anne Bholat, M.D., Michael Bishop, M.D., Randy W.
21   Hawkins, M.D., Howard Krauss, M.D., Ronald H. Lewis, M.D., Geraldine Shipske, R.N.P.
22   (sued as Gerri Shipske), Jaime Wright, Barbara Yaroslavsky, Felix C. Yip, M.D., Cesar A.
23   Aristeiguita, M.D., Steve Alexander, Stephen Richard Corday, M.D., Shelton J.
24   Duruisseau, Ph.D., Mary Lynn Moran, M.D., Gary Gitnick, M.D., Janet Salomonson,
25   M.D., Ronald Wender, M.D., Frank Zerunyan, J.D., Hedy L. Chang, Eric Esrailian, M:D.,
26   and Reginald Low, M.D. (collectively "Defendants").  (Mot. Dismiss, ECF No. 131.)  The
27   Parties have fully briefed the motion.  (*See* ECF Nos. 137, 138.)  Pursuant to Civil Local
28
                                          1

Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

## I.   PROCEDURAL HISTORY

On September 25, 2012, Plaintiff, proceeding *in propria persona*, filed this lawsuit in federal court alleging the California Medical Board ("Medical Board") wrongfully took disciplinary actions against Plaintiff's physician's and surgeon's certificate.  (ECF No. 1.) On January 17, 2013, Plaintiff filed a First Amended Complaint seeking injunctive and declaratory relief. (ECF No. 8.)  The First Amended Complaint named Defendants Medical Board of California; Linda Whitney, Executive Director; and Sharon Levine, M.D., President.  (*Id.*)

Defendants then filed a motion to dismiss Plaintiff's First Amended Complaint, (ECF No. 13), and Plaintiff filed a motion for preliminary injunction.  (ECF No. 17.)  On March 19, 2013, the Court denied Plaintiff's motion for preliminary injunction.  (ECF No. 23.)  On May 2, 2013, Plaintiff filed a motion for reconsideration of the Court order denying Plaintiff's motion for preliminary injunction.  (ECF No. 26.)  On May 8, 2013, the Court granted Defendants' motion to dismiss Plaintiff's First Amended Complaint and denied Plaintiff's motion for reconsideration, but granted Plaintiff leave to amend his complaint.  (ECF No. 28.)

On December 31, 2013, Plaintiff filed a Second Amended Complaint ("SAC"), *nunc pro tunc* to December 24, 2013, against Defendants Kimberly Kirchmeyer, Interim Executive Director and Deputy Director of the Medical Board of California; Linda K. Whitney, Executive Director; and Sharon Levine, M.D., President.  (ECF No. 44.)  On February 21, 2014, Defendants filed a motion to dismiss Plaintiff's SAC.  (ECF No. 50.) On May 30, 2014, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's SAC, and granted Plaintiff leave to amend his complaint.  (ECF No. 59.)

On July 11, 2014, Plaintiff filed a Third Amended Complaint ("TAC").  (ECF No. 61.)  He again named as Defendants Kimberly Kirchmeyer, Interim Executive Director,

Deputy Director, and Executive Director of the Medical Board of California, in her personal and official capacities; Linda K. Whitney, Executive Director, in her personal capacity; and Sharon Levine, M.D., President, in her personal and official capacities. (*Id.*) On August 8, 2014, Defendants filed motions to dismiss the second claim in Plaintiff's TAC, which challenged the constitutionality of California Business and Professions Code section 2337 and the associated California Court of Appeal Rules, and motion to strike Plaintiff's TAC. (ECF No. 65.) On November 3, 2014, the Court granted Defendants' motion to dismiss without leave to amend and denied Defendant's motion to strike. (ECF No. 72.)

On June 10, 2015, Plaintiff filed an Ex Parte Application to Amend Third Amended Complaint to Add Parties, *nunc pro tunc* to June 8, 2015 (ECF No. 90), which the Court construed as a motion for leave to amend the TAC (ECF No. 91). On September 3, 2015, the Court granted Plaintiff's motion. (ECF No. 100.)

On September 25, 2015, Plaintiff filed a FAC, the current operative complaint. (ECF No. 102.) The FAC names twenty–seven Defendants: (1) Kimberly Kirchmeyer, Interim Executive Director, Deputy Director, and Executive Director of the Medical Board of California, in her personal and official capacities; (2) Linda K. Whitney, Executive Director, in her personal capacity; (3) Sharon Levine, M.D., President, in her personal and official capacities and current Medical Board member; other current members of the Medical Board: (4) David Serrano Sewell, (5) Dev GnanaDev, M.D., (6) Denise Pines, (7) Michelle Anne Bholat, M.D., (8) Michael Bishop, M.D., (9) Randy W. Hawkins, M.D., (10) Howard Krauss, M.D., (11) Ronald H. Lewis, M.D., (12) Geraldine Shipske, R.N.P. (sued as Gerri Shipske), (13) Jaime Wright, (14) Barbara Yaroslavsky, (15) Felix C. Yip, M.D., in their official and individual capacities; and former members of the Medical Board: (16) Cesar A. Aristeiguita, M.D., (17) Steve Alexander, (18) Stephen Richard Corday, M.D., (19) Shelton J. Duruisseau, Ph.D., (20) Mary Lynn Moran, M.D., (21) Gary Gitnick, M.D., (22) Janet Salomonson, M.D., (23) Ronald Wender, M.D., (25) Frank Zerunyan,

J.D., (25) Hedy L. Chang, (26) Eric Esrailian, M:D., and (27) Reginald Low, M.D. in their individual capacities.  (*Id.*)

On December 8, 2015, Defendants filed the instant motion to dismiss Plaintiff's FAC (ECF No. 131), and related Request for Judicial Notice (RJN, ECF No. 132).  On January 25, 2016, Plaintiff filed oppositions to Defendants' motion to dismiss and request for judicial notice.  (ECF Nos. 136, 137.)  On February 1, 2016, Defendants filed a reply.  (ECF No. 138.)

## II.   BACKGROUND

As set forth in the Court's previous orders, this action arises out of Plaintiff's challenges to the Medical Board's decision to revoke his medical license.  Plaintiff was licensed by the State of California in 1972 as a Doctor of Medicine and Surgery.  (FAC ¶ 70, ECF No. 102.)  On June 8, 2000, Plaintiff admitted an 81–year old female patient with a history of medical complications to the San Antonio Community Hospital.  (*Id.* ¶¶ 76, 81.)  Plaintiff transferred the patient to Pomona Valley Hospital ("PVH"), where Plaintiff was a provisional member of the medical staff.  (*Id.* ¶¶ 82–85.)  Plaintiff performed a series of surgeries on the patient, leading to an above–the–knee amputation of the patient's leg due to gangrene the patient had contracted following previous surgeries performed by Plaintiff.  (*Id.* ¶¶ 89–114.)  Related to Plaintiff's treatment of the patient and other concerns about the Plaintiff's performance as a provisional staff member, PVH suspended Plaintiff's vascular surgery privileges around November 2000.  (*Id.* ¶¶ 115–120.)  Plaintiff requested injunctive relief from the California Superior Court, which was denied for failure to exhaust his administrative remedies.  (*Id.* ¶ 121.) Following these proceedings, PVH terminated Plaintiff from the medical staff.  (*Id.* ¶ 122.)  Plaintiff requested declaratory relief from the Superior Court, which again was denied for failure to exhaust administrative remedies and affirmed by the Court of Appeals.  (*Id.* ¶¶ 123, 126.)

Defendants' actions against Plaintiff commenced on August 21, 2003, when Defendants filed an accusation against Plaintiff for misdiagnosis, negligence, improper

transfer, and failure to document in connection with his care of the aforementioned PVH patient. (*Id.* ¶¶ 134–35.) On November 8, 2004, Defendants added charges of fabricating documents and dishonesty in a First Amended Accusation against Plaintiff. (*Id.* ¶ 159.) Although an Administrative Law Judge dismissed the First Amended Accusation, (*id.* ¶ 176), Defendants filed a Second Amended Accusation on April 6, 2005. (*Id.* ¶ 217.)

On December 6, 2006, Defendants revoked Plaintiff's medical license. (*Id.* ¶ 227.) Following the revocation, Plaintiff filed a writ of mandamus with the California Superior Court. (*Id.* ¶ 228.) The court granted Plaintiff's petition, dismissing five out of six charges against Plaintiff; vacating the Medical Board's decision; and remanding the matter to the Medical Board to reconsider a penalty consistent with the Superior Court's opinion. (*Id.* ¶¶ 231, 240.) Plaintiff then filed a petition for writ relief with the California Court of Appeal, pursuant to California Business & Professions Code section 2337, but on April 4, 2008, it was summarily denied without the court ordering opposition, affording oral arguments, or issuing a written opinion. (*Id.* ¶ 242.)

After review, the Medical Board reissued its decision on June 13, 2008. (*Id.* ¶¶ 250–52.) Plaintiff again filed a petition for writ of relief with the California Superior Court, alleging the Medical Board had not reviewed its decision but rather had simply reissued the previous findings. (*Id.* ¶ 256.) Plaintiff further alleged the Medical Board had unlawfully made a finding of gross and repeated negligence, improperly determined the penalty, and wrongfully discriminated against Plaintiff and other minorities by disproportionately revoking licenses of physicians in the minority groups. (*Id.* ¶¶ 257–63.) The Superior Court directed the Medical Board to set aside its decision to revoke Plaintiff's licenses and remanded the matter to re–determine the penalty issues. (*Id.* ¶ 224.)

Following a hearing, the Medical Board issued another decision on September 27, 2010, finding "repeated" and "gross negligence" and imposing a five–year probation with various terms and conditions. (*Id.* ¶¶ 274–86.) Plaintiff filed a third writ of mandamus in the Superior Court challenging the Medical Board's decision. (*Id.* ¶ 297.) The Superior

Court issued an order temporarily staying enforcement of probation conditions, and later mandated the Medical Board vacate the probation terms requiring Plaintiff to undergo psychiatric evaluation. (*Id.* ¶ 299.) On January 26, 2012, the Court of Appeal summarily denied Plaintiff's writ, without ordering opposition, affording oral arguments, or issuing a written opinion, under California Business and Professions Code section 2337 and its appellate rules. (*Id.* ¶ 305.) On February 15, 2012, Defendants complied with the Superior Court's order, striking the probation condition of psychiatric evaluation effective March 16, 2012. (*Id.* ¶ 306.) On August 16, 2012, Defendants revoked Plaintiff's license for the fourth time for not complying with the conditions of probation. (*Id.* ¶ 308.)

Plaintiff's remaining claim in the FAC is for a "Permanent Injunction." (*Id.* at 86.) In support of his claim Plaintiff makes the following primary allegations: Plaintiff had a property interest in his medical license, protected by the U.S. Constitution; Defendants in bad faith brought false fraudulent charges of misdiagnosis; Defendants denied Plaintiff due process; Defendants refused to consider additional evidence and failed to provide Plaintiff the opportunity for a full and fair hearing; Defendants conducted a sham administrative hearing; Defendants committed extrinsic fraud; Defendants misled the California Superior Court; and Defendants disobeyed the Superior Court decisions. (*Id.* ¶¶ 314–400.)

Plaintiff's FAC seeks: (1) an injunction permanently enjoining Defendants from imposing disciplinary action against Plaintiff for the wrongful diagnosis charges raised in the original 2003 Accusation and subsequent amended accusations against him, (*id.* at 102); (2) reinstatement of his California medical licensee (*id.*); (3) monetary relief, including prejudgment interest on liquidated monetary losses (*id.*); (4) expungement of record of discipline since 2002; (5) a declaration of Plaintiff's rights in relation to Defendants' alleged unconstitutional behavior, (*id.* at 103–04); and (6) attorney's fees (*id.* at 104.)

//

//

1   **III.   LEGAL STANDARDS**

2       **A.   Rule 12(b)(1)**

3       Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek

4   to dismiss a complaint for lack of jurisdiction over the subject matter.  The federal court is

5   one of limited jurisdiction.  *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769,

6   774 (9th Cir. 1986).  As such, it cannot reach the merits of any dispute until it confirms its

7   own subject matter jurisdiction.  *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S.

8   83, 95 (1998).  When considering a Rule 12(b)(1) motion to dismiss, the district court is

9   free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving

10  factual disputes where necessary.  *See Augustine v. United States*, 704 F.2d 1074, 1077

11  (9th Cir. 1983).   In such circumstances, "[n]o presumptive truthfulness attaches to

12  plaintiff's allegations, and the existence of disputed facts will not preclude the trial court

13  from evaluating for itself the merits of jurisdictional claims."  *Id.* (quoting *Thornhill*

14  *Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir.

15  1979)).  Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing

16  that jurisdiction exists.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

17  (1994).

18      **B.   Rule 12(b)(6)**

19      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

20  sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal

21  is proper where there is either a "lack of a cognizable legal theory" or "the absence of

22  sufficient facts alleged under a cognizable legal theory."  *Balisteri v. Pacifica Police Dep't*,

23  901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, the plaintiff must allege

24  "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

25  *Twombly*, 550 U.S. 544, 569 (2007).  While a plaintiff need not give "detailed factual

26  allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above

27  the speculative level."  *Id.* at 545.  "[F]or a complaint to survive a motion to dismiss, the

28

non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). If a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). Pro se litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). However, the Ninth Circuit has declined to ensure that district courts advise pro se litigants of rule requirements. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-67 (9th Cir. 1986) ("Pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record . . . it is not for the trial court to inject itself into the adversary process

on behalf of one class of litigant"). And, in giving liberal interpretation to a pro se complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV.   Request for Judicial Notice

Defendants seek judicial notice of three documents: (1) Order Accepting Report and Recommendation of United States Magistrate Judge to dismiss the case with prejudice as to all defendants in *Jehan Zeb Mir, MD. v. Kenneth B. Deck, MD., et al.* ("*Mir v. Deck*"), Case No. SACV12-0-01629 RGK (SH) (RJN, Ex. 1, ECF No. 88); (2) the underlying Report and Recommendation issued by Magistrate Judge Stephen J. Hillman (*id.*, Ex. 2); and (3) the docket in United States Court of Appeals for the Ninth Circuit, Case No. 13–56747 appealing the District Court's order of dismissal in *Mir v. Deck* (*id.*, Ex. 3).

Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed matters of public record), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). A court may take judicial notice of its own files and of documents filed in other courts. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case that bore on whether the plaintiff was still able to assert its claims in the pending case); *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); *Hott v. City of San Jose,* 92 F. Supp. 2d 996, 998 (N.D. Cal.

2000) (taking judicial notice of relevant memoranda and orders filed in state court cases). Plaintiff objects to Defendants' Request for Judicial Notice on the ground that these documents are irrelevant to the controversy before the Court. The Court finds that these documents are part of public record and thus their accuracy cannot reasonably be questioned. Accordingly, the Court hereby takes judicial notice of Exhibits 1–3. (RJN, Exs. 1–3, ECF No. 88.)

## V.   DISCUSSION

Defendants move to dismiss Plaintiff's FAC on six grounds: (1) Plaintiff's "individual capacity" claim against defendants named in an earlier case are barred by the doctrine of res judicata; (2) Plaintiff's claim is barred by the applicable statute of limitations; (3) Medical Board Defendants are entitled to absolute quasi–judicial immunity; (4) Plaintiff's claims against Medical Board Defendants are barred by Eleventh Amendment; (5) Plaintiff's claim pursuant to 42 U.S.C. § 11112 is not cognizable because the Health Care Quality Improvement Act of 1986 ("HCQIA") is not applicable to Defendants; and (6) Plaintiff fails to sufficiently allege a plausible claim under 42 U.S.C. § 1983.

### A.   Res Judicata

Defendants Levine, Schipske, Yaroslavsky, Aristeiguita, Alexander, Corday, Duruisseau, Moran, Gitnick, Salomonson, Wender, Zerunyan, Chang, Esrailian, and Low—who were also defendants in *Mir v. Deck*, No. SACV 12-1629-RGK SH, 2013 WL 4857673 (C.D. Cal. Sept. 11, 2013)—move to dismiss the FAC under Rule 12(b)(6) based on res judicata grounds. (Mot. Dismiss at 10–11, ECF No. 131.) Defendant Levine is sued in her official and individual capacity and the remaining defendants are sued only in their individual capacities. Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940); 1B James Wm. Moore et al., Moore's Federal

Practice § 131.11[3] (3d ed. 2013).  To determine the preclusive effect of *Mir v. Deck*—a federal lawsuit—the court must look to federal law.  *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1077 n.10 (9th Cir. 2003) (noting that "'[t]he res judicata effect of federal court judgments is a matter of federal law'").  Under federal law, "[r]es judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of European Fed. Credit Bank,* 630 F.3d 1139, 1150 (9th Cir. 2011).

Plaintiff argues that res judicata does not apply to the instant case because Defendants failed to plead claim preclusion as an affirmative defense pursuant to Rule 8(c) and Plaintiff has not filed any suit after the dismissal of *Mir v. Deck*.  (Opp'n at 23–25, ECF No. 137.)  Rule 8(c) identifies res judicata (claim preclusion) as an affirmative defense that must be raised in the answer.  *See* Fed. R. Civ. P. 8(c).  Failure to plead claim preclusion may constitute waiver of the defense.  *See Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995) ("Claim preclusion is an affirmative defense which may be deemed waived if not raised in the pleadings.").  Rule 12(g)(2) provides "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  Thus, when judgment giving rise to preclusion defense is rendered after initial pleading stage in pending litigation as is the case here, a party should seek leave under Rule 15(d).  *See id.* 15(d).  However, Courts will permit preclusion defenses to be raised and determined by motion under Rule 12(b)(6).  *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss . . . but this is not true when, as here, the defense raises no disputed issues of fact.").

Plaintiff added fourteen of the fifteen Defendants asserting res judicata in the FAC after the Court granted leave to amend the TAC and these newly added Defendants raise res judicata challenges for failure to state a claim under Rule  12(b)(6).  Further, waiver of

the claim preclusion defense by the parties in litigation does not prevent the trial court from raising the defense *sua sponte*. *See Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211, 115 (1995); *see also Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 329 (9th Cir. 1995) ("As we have the ability to overlook waiver and raise the res judicata issue *sua sponte* we may do so with respect to issue preclusion."). Thus, the Court considers whether Plaintiff's claim against the Defendants previously name in *Mir v. Deck* are barred by federal res judicata.

### 1) Identity of Claims

To determine the identity of claims, the Ninth Circuit has applied four criteria: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* at 1150 (quoting *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201–02 (9th Cir. 1982). The fourth criterion is the most important. *Id.*

As the Ninth Circuit has stated, "[i]dentity of claims exists when two suits arise from the same transactional nucleus of facts." *Tahoe–Sierra,* 322 F.3d at 1078 (internal quotation marks omitted). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Int'l Union of Operating Engineers–Employers Constr. Industry Pension, Welfare & Training Trust Funds v. Karr,* 994 F.2d 1426, 1429 (9th Cir. 1993) (internal quotation marks omitted). "Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe–Sierra,* 322 F.3d at 1078. In other words, "[t]he fact that res judicata depends on an 'identity of claims' does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Id.* at 1077–78. "Newly articulated claims based on the same

nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Id.* It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought. *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987).

Here, the Court finds that the previous lawsuit and the current lawsuit are related to the same transactional nucleus of facts and based on the same evidence. In both lawsuits, there is a core set of allegations related to the Medical Board's actions that eventually resulted in the revocation of Plaintiff's medical license, including *inter alia* failing to conduct a proper investigation, conducting a sham administrative hearing, filing false accusations, and disobeying state court's orders. (*See*, *e.g.*, FAC ¶¶ 314–400.) Although Plaintiff has modified his causes of action, the instant case still involves the same nucleus of facts (i.e., the Medical Board's revocation of Plaintiff's medical license). Plaintiff "cannot avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in his prior action or by pleading a new legal theory." *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986). Thus, the claims presented in this action could have been presented in plaintiff's earlier action. Further, the Court in *Mir v. Deck* held that the fifteen Defendants also named here are absolutely immune for their quasi–judicial acts performed as members for the Medical Board. (RJN, Exs. 1, 2, ECF No. 132.) Allowing Plaintiff's claim against the same individuals in their individual capacity for the same conduct alleged in *Mir v. Deck* would impair their rights and interests established in that case. As such, there is an identity of claims.

With respect to Defendants Levine, Schipske and Yaroslavsky, Plaintiff additionally alleges that, as current members of the Medical Board they are wrongfully enforcing the Medical Board's 2012 Decision revoking Plaintiff's medical license. (FAC ¶ 68, ECF No. 102.) While is clear that wrongful conduct that occurs before the prior action was filed falls within the claim preclusion effect of the judgment in that action, it is also clear that

wrongful conduct that occurs after the judgment is entered in a prior action is not within the scope of claim preclusion.  *See* 1B James Wm. Moore et al., Moore's Federal Practice § 131.23[3][c] (3d ed. 2013); *see also Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) ("While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."); *L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 750 F.2d 731, 740-41 (9th Cir. 1984) (en banc) (holding that claim preclusion barred segregation claims for acts occurring before prior lawsuit, but did not bar claims for acts occurring after prior lawsuit); *Knox v. Donahoe*, No. 11-CV-2596-EMC, 2012 WL 949030, at *4-5 (N.D. Cal. 2012) (holding that claim preclusion barred employment discrimination claims to the extent they were based on events covered by prior lawsuit, but not to the extent the claims were based on events which took place after prior lawsuit)  Thus, alleged wrongful conduct by Defendants Levine, Schipske and Yaroslavsky that occurred after September 11, 2013—the date judgment was entered in *Mir v. Deck*, No. SACV 12-1629-RGK SH, 2013 WL 4857673 (C.D. Cal. Sept. 11, 2013) (ECF No. 89)—does not fall within the scope of res judicata.

### 2)    Final Judgment on the Merits

Res judicata also requires final judgment on the merits.  "Dismissal of an action with prejudice, or without leave to amend, is considered a final judgment on the merits." *Nnachi v. City of San Francisco,* No. C 10–00714 MEJ, 2010 WL 3398545, at *5 (N.D. Cal. Aug. 27, 2010), *aff'd,* 467 Fed. Appx. 644 (9th Cir. 2012).  The federal rule on the preclusive effect of a judgment from which an appeal has been taken is that the pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of *res judicata*. *See* 1B James Wm. Moore et al., Moore's Federal Practice § 131.30[2][c][ii] (3d ed. 2013); *see also Huron Holding Co. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) (appeal does not "detract from . . . decisiveness and finality" of judgment); *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("To deny preclusion in these circumstances

would lead to an absurd result: Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation."). *See generally* Restatement (Second) of Judgments § 13 cmt. f (1982).

In *Mir v. Deck*, the Court granted Defendants' motion to dismiss with prejudice and judgment was entered in Defendants' favor. *See* Mir *v. Deck*, No. SACV 12-1629-RGK SH, 2013 WL 4857673 (C.D. Cal. Sept. 11, 2013); ECF Nos. 88–89. The pendency of Plaintiff's appeal of the district court's decision does not suspend the operation of final judgment for purposes of res judicata. *See Huron Holding Co.*, 312 U.S. at 189. Thus, there was a final judgment on the merits.

### 3)      Privity Between Parties

The prior litigation must have involved the same parties or their privies. *Leon v. IDX Systems Corp.,* F.3d 951, 963 (9th Cir. 2006). "Whether a person was a party to the prior suit must be determined as a matter of substance and not of mere form." *American Triticale, Inc. v. Nytco Serv., Inc.*, 962 F.2d 1391, 1147 (9th Cir. 1981). Privity will be found only where the interests of the non–party were adequately represented in the earlier action, *Hansberry v. Lee,* 311 U.S. 32, 44–45 (1940), and the previous litigation afforded "proper protection to the rights of the person sought to be bound." *In re Herbert M. Dowsett Trust,* 7 Haw. App. 640, 791 P.2d 398, 402 (1990) (internal quotation marks and citation omitted), *cert. denied,* 71 Haw. 667, 833 P.2d 900 (1990).

There is not privity, however, where the parties in the two suits have not been sued in the same capacity because a defendant in his official capacity does not represent the same legal right as he does in an individual capacity. *See Andrews v. Daw,* 201 F.3d 521, 525 (4th Cir. 2000); *Escamilla v. Giurbino,* No. 07–CV–0353 W(POR), 2008 WL 4493035 at *5 (S.D. Cal. 2008) (denying defendants' motion to dismiss the prisoner–plaintiff's claims against defendants in their individual capacities on grounds that the privity element is not satisfied when plaintiff sued a defendant in his official capacity in his prior action).

1    *See generally Restatement (Second) of Judgments,* 36(2) (Mar. 2014) ("A party appearing

2    in an action in one capacity, individual or representative, is not thereby bound by or entitled

3    to the benefits of the rules of res judicata in a subsequent action in which he appears in

4    another capacity."); 1B James Wm. Moore et al., Moore's Federal Practice § 131.40[2][a]

5    (3d ed. 2013) ("[A] government official who sues or is sued in an official capacity is not

6    in privity with himself or herself in an individual capacity for purposes of claim

7    preclusion.").

8         In *Mir v. Deck*, Plaintiff sued the fifteen Defendants also named here in their

9    individual capacities.  In the instant case, Plaintiff has sued Defendants Aristeiguita,

10   Alexander, Corday, Duruisseau, Moran, Gitnick, Salomonson, Wender, Zerunyan, Chang,

11   Esrailian and Low in their individual capacities and Defendants Levine, Schipske and

12   Yaroslavsky in their official and individual capacities.  Insofar as Plaintiff has sued these

13   Defendants in their individual capacities, privity exists because the same Defendants were

14   sued in *Mir v. Deck* in the same capacities.  Insofar as Plaintiff has sued Defendants Levine,

15   Schipske and Yaroslavsky in their official capacities, privity is not satisfied because *Mir.*

16   *v. Deck* involved those three defendants in their individual capacity only.

17        The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's claims

18   based on res judicata as to the fifteen Defendants named in the instant case who were also

19   named in *Mir v. Deck*.  The doctrine of res judicata bars relitigation of Plaintiff's against

20   Defendants Levine, Schipske, Yaroslavsky Aristeiguita, Alexander, Corday, Duruisseau,

21   Moran, Gitnick, Salomonson, Wender, Zerunyan, Chang, Esrailian, and Low in their

22   individual capacities for pre–September 11, 2013 conduct because there is identity of

23   claims, final judgment on the merits, and privity between parties in the instant case and

24   *Mir v. Deck*.  Plaintiff's claim against Defendant Levine, Schipske and Yaroslavsky in their

25   individual capacities arising from post–September 11, 2013 conduct only is not barred by

26   res judicata.

27   //

28
                                              16

**B.     Statute of Limitations and Relation Back**

Defendants argue that Plaintiff's claim against newly added past and current Medical Board Defendants is time–barred. (Mot. Dismiss at 19, ECF No. 131.) Defendants argue that although the original complaint against the State of California was filed on September 25, 2012, the FAC newly naming Defendants Sewell, GnanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Schipske, Wright, Yaroslavsky, Yip, Aristeiguita, Alexander, Corday, Duruisseau, Moran, Gitnick, Salomonson, Wender, Zerunyan, Chang, Esrailian, and Low was not filed until September 25, 2015, and this amended pleading does not relate back to the original pleading. (*Id.*) Plaintiff appears to contend that the statute of limitations was tolled but fails to identify a relevant applicable tolling rule. In the alternative, Plaintiff argues that his claim against newly named current and former Medical Board Defendants related back to the filing of the original complaint on September 25, 2012 (ECF No. 1). Having found that res judicata bars Plaintiff's claim against former Board Members Aristeiguita, Alexander, Corday, Duruisseau, Moran, Gitnick, Salomonson, Wender, Zerunyan, Chang, Esrailian, and Low and against Defendants Schipske and Yaroslavsky in their individual capacities arising from pre–September 11, 2013 conduct, the Court's inquiry is limited to whether Plaintiff's claim against current Medical Board members is barred by the statute of limitations.

**1)     Statute of Limitations**

Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts "'apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law.'" *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (quoting *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004)). Under California law, a two–year statute of limitations applies to personal injury claims, including Section 1983 actions. CAL. CODE CIV. PROC. § 335.1; *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011)

1    ("The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the

2    personal injury statute of limitations of the state in which the cause of action arose."); *see,*

3    *e.g.*, *Thompson v. City of Shasta Lake*, 314 F. Supp. 2d 1017, 1023 (E.D. Cal. 2004).  To

4    determine when that two–year statutory clock begins to run for a Section 1983 claim in

5    federal court, federal law applies.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

6    Under federal law, the so–called "discovery rule" provides that "a claim accrues when the

7    plaintiff knows or has reason to know of the injury which is the basis of the action."  *Id.* at

8    991–92 (citation omitted).

9            Applying the two–year statute of limitations, Plaintiff's Section 1983 claim against

10   Defendant Yaroslavsky based on the 2006 Decision (*see*  FAC ¶ 337) was untimely unless

11   filed by December 2008.  Plaintiff's Section 1983 claim against Defendants Schipske and

12   Yaroslavsky based on the June 13, 2008 Decision (*see id.* ¶ 250) was untimely unless filed

13   by June 13, 2010.  Plaintiff's section 1983 claim against Defendant Schipske based on the

14   September 27, 2010 Decision (*see id.* ¶¶ 58, 362) was untimely unless filed by September

15   27, 2012.  Plaintiff's claim against Defendant Levine based on the September 27, 2010

16   Decision is not time–barred, however, because Plaintiff named Defendant Levine in his

17   original complaint filed within two years, on September 25, 2012 (ECF No. 1).  Plaintiff's

18   claim against Defendant Schipske based on the September 27, 2012 Decision (*see id.* ¶ 362)

19   was untimely unless filed by September 27, 2014.  It appears that Plaintiffs allegations

20   regarding current Medical Board members' conduct since the September 27, 2012 Decision

21   is that they are "currently enforcing the illegal 2010 Decision placing Plaintiff on probation

22   and 2012 Default Decision by Defendant Whitney revoking for not completing (sic) the

23   illegal probation ."  (*Id.* ¶ 395.)  Although Plaintiff does not specify the dates for this

24   conduct and his allegations may be insufficient for other reasons, construing Plaintiff's

25   allegations liberally, the current Medical Board members' conduct is not time barred to the

26   extent it occurred within two years of when Plaintiff filed the FAC on September 25, 2015

27

28
                                                  18

(ECF No. 102), in other words on or after September 25, 2013.[1]

### 2) Relation Back

#### a. Relation Back Under State Law

Whether an amendment relates back in an action under 42 U.S.C. § 1983 requires a court to "consider both federal and state law and employ whichever affords the more permissive relation back standard." *Klamut v. California Highway Patrol*, No. 15-CV-02132-MEJ, 2015 WL 9024479, at *4 (N.D. Cal. Dec. 16, 2015) (citing *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014)).  California Code of Civil Procedure section 473(a)(1), which governs amendment of pleadings, does not expressly permit relation back of amendments.  California courts have held that section 473(a)(1) "does not authorize the addition of a party for the first time whom the plaintiff failed to name in the first instance." *Kerr-McGee Chem. Corp. v. Superior Ct.*, 160 Cal. App. 3d 594, 598 (1984).  However, "where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004) (citations omitted).  Thus, section 474 of the California Code of Civil Procedure permits a plaintiff to substitute a new defendant for a fictitious Doe defendant named in the original complaint. *Woo v. Superior Court*, 75 Cal. App. 4th 169, 176 (1999).  However, in order to come under that exception the plaintiff must have been "genuinely ignorant" of the new defendant's identity at the time the plaintiff filed the original complaint. *Id.* at 177.

---

[1] As discussed *supra*, Plaintiff's claim against current and former Medical Board defendants in their individual capacities who were also named in *Mir v. Deck* are barred by the doctrine of res judicata for conduct arising before the September 11, 2013 judgment entered in that case. *See supra* Section IV(B)(3).  The applicable statute of limitations limits Plaintiff's claim against Medical Board defendants both in their individual and official capacities to conduct occurring on or after September 25, 2013.

In this case, the requirements of section 474 have not been satisfied. For section 474 to apply, the plaintiff must be "genuinely ignorant" of the new defendant's identity at the time the original complaint is filed. *Id.*; *see also Hazel v. Hewlett*, 201 Cal. App. 3d 1458, 1464 (1988) (noting that for section 474 to apply, "it is necessary that the plaintiff actually be ignorant of the name or identity of the fictitiously named defendant at the time the complaint is filed"). Plaintiff did not name any Doe defendants in the original complaint, nor can he argue that he was "genuinely ignorant" of the identities of Medical Board members at any time after the filing of his original complaint as their identifies are publicly available. Plaintiff's argument that Defendants did not disclose the identities of proper parties three years ago (Opp'n at 14, ECF No. 137) is thus unavailing. Because the identity of Medical Board members was publicly available to Plaintiff when he filed the original complaint, the requirements for relation back under state law are not satisfied. *See Butler,* 766 F.3d at 1202 (plaintiff's addition of new defendants did not relate back under California law because plaintiff "was not ignorant" of their names or identities at the time the original complaint was filed).

### b.   Relation Back Under Federal Law

Plaintiff also does not satisfy the requirements for relation back under federal law, which is set forth in Federal Rule of Civil Procedure 15(c). Under Rule 15(c), an amended pleading relates back to the filing of the original complaint if the following requirements are met: "(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it." *Butler*, 766 F.3d at 1191. Relation back under the federal rule thus "depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere*, 560 U.S. 538, 541 (2010). Additionally, the second and third requirements must have been fulfilled

1    within 120 days after the original complaint is filed, as prescribed by Federal Rule of Civil

2    Procedure 4(m).   *Butler*, 766 F.3d at 1200 (citing *Hogan v. Fischer*, 738 F.3d 509, 517

3    (2nd Cir. 2013)).

4         Although the first requirement is satisfied—Plaintiff's claim against all Defendants

5    arises out of the proceedings that resulted in the revocation of his California medical

6    license—the second and third requirements are not.  Defendants Schipske and Yaroslavsky

7    had already been named in *Mir v. Deck* for much of the same conduct as in the instant case

8    and there is no reason why they "must or should have known that, for a mistake concerning

9    identity, the action would have been brought against [them]." *Butler*, 766 F.3d at 1191.

10   Plaintiff cannot get two bites at the apple and circumvent the statute of limitations by

11   alleging a different cause of action for the same underlying conduct.  Plaintiff's reasoning

12   for relation back of his claim against current Medical Board members who were not named

13   in *Mir v. Deck* is even more tenuous.   There is no indication that Defendants Sewell,

14   GnanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Wright or Yip, by virtue of

15   becoming members of the Medical Board, should have been on notice that they would be

16   named as Defendants in an action arising from the Medical Board's decision preceding

17   their tenure.  Plaintiff has also not established that these Defendants knew or should have

18   known that her lawsuit would have been brought against them but for Plaintiff's mistake.

19   Nor were the second and third requirements fulfilled within 120 days after the original

20   complaint was filed as prescribed by Rule 4(m).   *Butler*, 766 F.3d at 1200.  As such,

21   Plaintiff has not satisfied the requirements for relation back under federal law.

22        Accordingly, Plaintiff's Section 1983 claim is barred by the applicable two–year

23   statute of limitations.  The Court therefore **GRANTS** Defendants' motion to dismiss

24   Plaintiff's Section 1983 claim arising from pre–September 25, 2013 conduct against

25   current Medical Board members (Defendants Schipske, Yaroslavsky, Sewell, GnanaDev,

26   Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Wright and Yip) in their individual and

27   official capacities.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    Absolute Immunity

Defendants argue that they are entitled to absolute immunity because "any alleged misconduct . . . necessarily occurred during the administrative disciplinary hearing process while they performed functions analogous to those of a judge." (Mot. Dismiss at 24, ECF No. 131.)  Plaintiff argues, inter alia, that there is no absolute immunity in an injunctive relief action, there is no immunity for ministerial acts and the *Butz* factors are not satisfied. (Opp'n at 15–19, ECF No. 137.)  Having found that Plaintiff's claim against Defendants named in *Mir v. Deck* is barred by the doctrine of res judicata and limited to post–September 25, 2013 conduct by the applicable statute of limitations, the Court's inquiry is limited to post–September 25, 2013 conduct by current Medical Board members and Plaintiff's allegations against Defendants Kirchmeyer and Whitney.

While 42 U.S.C. § 1983 does not explicitly provide immunity for government actors, the Supreme Court has consistently accorded absolute immunity "to judges and prosecutors functioning in their official capacity" in order to ensure that judicial officers are "free to act upon [their] own convictions, without apprehension of personal consequences." *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 922 (9th Cir. 2004) (internal citations omitted). Absolute immunity may also be extended to state officials who are not traditionally regarded as judges or prosecutors if the functions they perform are similar to those performed by judges or prosecutors.  *Butz v. Economou,* 438 U.S. 478, 513–17 (1978); *Mishler v. Clift,* 191 F.3d 998, 1002 (9th Cir. 1999); *Olsen,* 363 F.3d at 923.

In *Mishler v. Clift,* the Ninth Circuit held that six nonexclusive factors should be analyzed in deciding whether absolute immunity should be granted.  *Mishler,* 191 F.3d 998, 1003 (9th Cir. 1999).  Those factors, originally articulated in *Butz*, 438 U.S. at 512–13, include: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process;

1    and (f) the correctability of error on appeal.  *Mishler,* 191 F.3d at 1003; *see also*
2    *Buckwalter,* 678 F.3d at 740.

3         Once the court determines that the official's function meets the *Butz* standard for
4    absolute immunity, the court analyzes whether the actions at issue in the case "are judicial
5    or closely associated with the judicial process."  *Mishler,* 191 F.3d at 1007.  Only acts
6    closely associated with the judicial process, not administrative acts, are entitled to absolute
7    immunity.  *Id.* at 1008–09 (acts occurring during the disciplinary hearing process were
8    entitled to immunity, but the administrative act of corresponding with another state medical
9    board was not); *Olsen,* 363 F.3d at 928 ("procedural steps involved in the eventual decision
10   denying [plaintiff] her license reinstatement" were entitled to immunity, but issuance of a
11   billing statement was not).

12        Courts in the Ninth Circuit have concluded that members of state medical boards
13   and their officers are entitled to absolute immunity for quasi–judicial or quasi–
14   prosecutorial acts based on the *Butz* factors.  *Olsen,* 363 F.3d at 925–26; *Mishler,* 191 F.3d
15   at 1007; *Gambee v. Williams,* 971 F. Supp. 474, 477 (D. Or. 1997).  These cases are in
16   accord with other courts' analyses of state medical boards.  *See Wang v. New Hampshire*
17   *Bd. of Registration in Med.,* 55 F.3d 698 (1st Cir. 1995); *Watts v. Burkhart,* 978 F.2d 269
18   (6th Cir.1992) (en banc) (Tennessee); *Bettencourt v. Bd. of Registration in Med.,* 904 F.2d
19   772 (1st Cir. 1990) (Massachusetts); *Horowitz v. State Bd. of Med. Examiners,* 822 F.2d
20   1508 (10th Cir. 1987) (Colorado).

21        Consideration of the *Butz* factors here weighs in favor of the conclusion that
22   Defendants are entitled to absolute immunity in connection with their actions of revoking
23   and enforcing the revocation of Plaintiff's medical license.

24            **1)**   ***Butz* Factors**

25                 **a.    Ensuring Performance of Functions Without Harassment**

26        The Medical Board is a state agency that is charged with protecting the health and
27   welfare of residents by regulating, licensing, and disciplining medical practitioners,

28

including conducting investigations and hearings with respect to licensing. CAL. BUS. & PROF. CODE §§ 2001, 2004 (West).  Section 2001.1 states, "Protection of the public shall be the highest priority for the Medical Board of California in exercising its licensing, regulatory, and disciplinary functions.   Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." *Id.* § 2001.1.  The Board's powers to discipline and potentially suspend a physician's license "are acts that are likely to stimulate numerous damages actions" by disgruntled physicians. *Mishler*, 191 F.3d at 1005.  Immunity therefore ensures that the Board can conduct these important activities without fear of harassment, in order to effectively address the strong public interest in quality health care. *See Olsen*, 363 F.3d at 924.

### b.    Safeguards Reducing Need for Private Damages Actions

California's statutory scheme governing the Medical Board's decisions and challenges to those decisions contains safeguards that effectively reduce the need for private damages actions.  The Medical Board functions under a comprehensive set of regulations, which are codified in the California Code of Regulations and the California Business and Professions Code.  Under those regulations, a physician, such as Plaintiff, who is deemed unsuitable to practice medicine in California may request a hearing regarding that finding.  CAL. CODE REGS. tit. 16, § 1364.30.  Moreover, assuming the physician is unsuccessful at the hearing, he or she may thereafter seek further review of the Board's decision in state court.  CAL. CIV. PROC. CODE § 1094.5 (West).  The state court then has authority to thoroughly inquire into the Board's decision, including whether the Board acted within its jurisdiction, whether the Board conducted a fair hearing, and whether the Board's decision resulted in prejudicial abuse of discretion.  *Id.* § 1094.5(b). Indeed, when analyzing this statutory scheme in the context of a physician's challenge to the Medical Board's revocation of his medical license, the Ninth Circuit observed that California provides a "meaningful opportunity" for aggrieved physicians to challenge the

Medical Board's decisions.  *See Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992) (finding that California's "statutory framework provides a meaningful opportunity for [physicians] to present [their] constitutional claims for independent review prior to the Board's decision becoming effective").  In short, California's statutory scheme governing the Board's decisions adequately reduces the need for private damages actions. California's statutory framework provided Plaintiff the opportunity and means to successfully obtain review of the Board's decisions on multiple occasions throughout the proceedings. Consequently, this factor also weighs in favor of granting its members absolute immunity.

### c.   Insulation from Political Influence

Through the above procedural safeguards, members of the Medical Board are sufficiently insulated from outside political pressures.  Moreover, as in both *Mishler* and *Olsen*, the Board includes public members who are not health professionals or related to health professionals.  CAL. BUS. & PROF. CODE § 2001 (West) ("There is in the Department of Consumer Affairs a Medical Board of California that consists of 15 members, 7 of whom shall be public members.").  The Governor appoints 13 members, 5 of whom are public, subject to confirmation by the Senate.  *Id.*  The Senate Committee on Rules and the Speaker of the Assembly each appoint a public member.  *Id.*  The presence of public members lessens the risk that the Board will make decisions based on financial self–interest.  *See Mishler*, 191 F.3d at 1006-07 (finding "risk of Board Members acting out of their own self–interest is further diminished" by presence of three public members on nine–person board); *Olsen*, 363 F.3d at 925 (finding that two public members on a seven–person Board lessen the risk that the Board will make decisions based on financial self–interest).  Although Board members can be removed, the appointing power can do so only for neglect of duty, incompetency, or unprofessional conduct.  CAL. BUS. & PROF. CODE § 2011.  Citing similar safeguards, both the *Mishler* and *Olsen* courts found that medical board members were insulated from political pressures.  Accordingly, this weighs in favor of absolute immunity. //

### d.    Precedent, Adversary Nature, and Correctability

The remaining *Butz* factors also weigh in favor of finding Medical Board's members absolutely immune.    First, California's statutory scheme provides that the Board's decisions may be designated as precedential decisions when they contain "a significant legal or policy determination of a general application that is likely to recur."  Cal. Code Regs. tit. 16, § 1364.40(a).  Although the Board may reverse such a designation, it can do so only after serving public notice of its intent.  *Id.* § 1364.40(d).  Second, as the *Olsen* Court observed, disciplinary hearings are necessarily adversarial. *See Olsen*, 363 F.3d at 925 (stating that "the Board's proceedings are clearly adversarial").  Finally, as described above, California provides for appeals from the Board's decisions, first through a Board hearing and then through the state court process.  In fact, "superior court review of a decision revoking, suspending, or restricting a license shall take preference over all other civil actions in the matter of setting the case for hearing or trial."  CAL. BUS. & PROF. CODE § 2337.

In sum, after evaluating California's administrative and regulatory scheme in light of these factors, the Court finds that the Medical Board functions in a sufficiently judicial and prosecutorial capacity to entitle members and officers to absolute immunity.

### 2)    Scope of Absolute Immunity

Finding that absolute immunity applies to any quasi–judicial or quasi–prosecutorial actions that Defendants committed does not end the Court's analysis.  The Court must also determine which, if any, of their alleged acts "are not sufficiently connected to their judicial function to warrant the shield of absolute immunity." *Olsen,* 363 F.3d at 926.  "[T]he protections of absolute immunity reach only those actions that are judicial or closely associated with the judicial process." *Mishler,* 191 F.3d at 1007–08 (finding that acts committed during a disciplinary hearing process fall within the scope of absolute immunity). *Mishler* accords with "well–established case law holding that medical board officials entitled to absolute immunity for their quasi–judicial and quasi–prosecutorial

functions." *Olsen,* 363 F.3d at 923 (citing *Wang v. New Hampshire Bd. of Registration in Med.,* 55 F.3d 698, 702 (1st Cir.1995) (holding that medical board's counsel entitled to absolute immunity for investigation surrounding disciplinary complaint); *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1490-91 (10th Cir. 1991) (same); *Bettencourt v. Bd. of Registration in Med.,* 904 F.2d 772, 782-83 (1st Cir. 1990) (holding that board officials are absolutely immune from suit by physician whose license was revoked); *Horwitz v. State Bd. of Med. Exam'rs,* 822 F.2d 1508, 1515 (10th Cir. 1987) (holding that medical board members are entitled to absolute immunity); *Yoonessi,* 352 F. Supp.2d at 1102-03 (holding that medical board officials are absolutely immune from suit by physician whose license was revoked). "Functions discussed in these cases include investigating charges, initiating charges, weighing evidence, making factual determinations, and issuing written decisions." *Mishler,* 191 F.3d at 1004. Later, in *Olsen,* the Ninth Circuit elaborated on *Mishler*'s previous explanation, adding that acts intimately related to a Board member's adjudicatory role in licensing physicians are likewise absolutely immune. *Olsen,* 363 F.3d at 928.

In contrast, ministerial acts enjoy no such protection. *Mishler,* 191 F.3d at 1008 (rejection application of absolute immunity to a Nevada Board member's failure to respond to inquiries from another state medical board). The *Mishler* Court reasoned that such an act, or failure to act, was not closely associated with the judicial process, but rather constituted an administrative function entailing examination of records and sending of correspondence. *Id.* Applying the same reasoning, the *Olsen* Court refused to accord absolute immunity to acts pertaining to a state medical board's billing practices. *Olsen,* 363 F.3d at 929.

Of course, the Court need not analyze those actions which are time–barred, so the Court's analysis with respect to defendants also named in *Mir v. Deck* is limited to whether alleged post–September 25, 2013 conduct falls within the scope of the current Medical Board member Defendants' absolute immunity. Here, Plaintiff's allegations against current Medical Board Defendants involve action closely related to their roles in a quasi–

judicial or quasi–prosecutorial process.  Plaintiff's only allegation regarding current Board Members that is plausibly not time–barred is that they are "currently enforcing the illegal 2010 Decision placing Plaintiff on probation and 2012 Default Decision by Defendant Whitney revoking for not completing the illegal probation."  (FAC ¶ 395, ECF No. 102.) "These alleged acts, unlike responding to general inquiries or maintaining billing procedures, cannot be classified as ministerial or administrative in nature."  *Yoonessi v. Albany Med. Ctr.*, 352 F. Supp. 2d 1096, 1103 (C.D. Cal. 2005).  *See*, *e.g.*, *Manzur v. Montoya*, No. 2:07-CV-00603JCMGWF, 2008 WL 1836957, at *5 (D. Nev. Apr. 24, 2008) *aff'd*, 337 F. App'x 692 (9th Cir. 2009) (finding that Plaintiff's allegations that members of the Board illegally revoked his medical license *and continue to "take"* his medical license involve only actions closely related to the their roles in a quasi–judicial or quasi-prosecutorial process); *Read v. Haley*, No. 3:12-CV-02021-MO, 2013 WL 1562938, at *9 (D. Or. Apr. 10, 2013) (finding that all members of the Oregon Medical Board are entitled to absolute immunity on claims arising out of the members' participation in the Board's disciplinary efforts).

Plaintiff's allegations against Defendants Kirchmeyer and Whitney likewise relate to actions taken in their official capacities as present and former Executive Directors of the Board, respectively.  The Court concludes that only Plaintiff's allegations that Defendants disseminated information regarding Plaintiff's licensing and disciplinary status through the Medical Board's website and to the National Data Bank and other states' medical boards (*see* FAC ¶¶ 6–9, 28) involve functions that are ministerial rather than quasi–judicial or closely related with the judicial process.  Plaintiff's remaining allegations relate to actions by Defendants Kirchmeyer and Whitney that directly relate to the resolution of Plaintiff's disciplinary proceedings.  However, although the Court finds that Defendants' acts of disseminating information regarding Plaintiff's status are ministerial in nature, the Court concludes that they cannot support a viable Section 1983 claim.  Because there is nothing in Plaintiff's FAC suggesting that Defendants Kirchmeyer and Whitney's acts of reporting

information regarding Plaintiff's status with the Medical Board violate Plaintiff's constitutional rights, Plaintiff's allegations are insufficient to support a Section 1983 cause of action.

In light of the foregoing, current Medical Board members—Defendants Levine, Schipske, Yaroslavsky, Sewell, GnanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Wright and Yip—and Defendants Kirchmeyer and Whitney are entitled to absolute immunity. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's individual capacity claims against these Defendants.

### D. Eleventh Amendment Immunity

The Court next considers whether Plaintiff's claim against current Medical Board member Defendants in their official capacities is barred by the Eleventh Amendment. The Eleventh Amendment to the U.S. Constitution prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Absent a waiver, state immunity extends to state agencies and to state officers. *Alabama v. Pugh*, 438 U.S. 781 (1978); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-46 (1993). In general, the federal courts lack jurisdiction over a suit against state officials when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 (1945)). In contrast, the Eleventh Amendment does not bar damages actions against state officials who are sued in their individual capacity. *Hafer v. Melo,* 502 U.S. 21, 31 (1991). In *Hafer,* the Supreme Court explained that "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 26.

However, under the *Ex parte Young* exception to Eleventh Amendment immunity, a plaintiff may bring suit in federal court against a state officer acting in violation of federal law for prospective relief. 209 U.S. 123 (1908); *see also Pennhurst*, 465 U.S. at 102-106.

"This exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct*, 506 U.S. at 146; *Edelman v. Jordan*, 415 U.S. 651 (1974) (finding that a federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief).

The question of whether the *Ex parte Young* exception to Eleventh Amendment immunity applies to Plaintiff's official capacity claim against current Medical Board Defendants turns on a "straightforward inquiry into whether [Plaintiff's] [C]omplaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon, MD Inc.*, 535 U.S. at 645. In discerning the line between permitted and prohibited suits, the Supreme Court has looked "to the substance rather than to the form of the relief sought . . . guided by the policies underlying the decision in *Ex parte Young*." *Papasan v. Allain*, 478 U.S. 265, 278-79 (1986) (internal citations omitted).

As discussed, Plaintiff's only allegation regarding current Board Members that is plausibly not time–barred is that they are "currently enforcing the illegal 2010 Decision placing Plaintiff on probation and 2012 Default Decision by Defendant Whitney revoking for not completing the illegal probation." (FAC ¶ 395, ECF No. 102.) With respect to these Defendants, Plaintiff does not sufficiently allege an ongoing violation of federal law, yet alone *a* violation of federal law—Plaintiff's Section 1983 claim is premised on an ongoing violation of federal law perpetrated by other Medical Board members and executives prior to these Defendants' tenure.

Further, as stated above, Plaintiff's FAC seeks: (1) an injunction permanently enjoining Defendants from imposing disciplinary action against Plaintiff for the wrongful diagnosis charges raised in the original 2003 Accusation and subsequent amended accusations against him, (*id.* at 102); (2) reinstatement of his California medical license (*id.*); (3) monetary relief, including prejudgment interest on liquidated monetary losses

1   (*id.*); (4) expungement of record of discipline since 2002; (5) a declaration of Plaintiff's

2   rights in relation to Defendants alleged unconstitutional behavior (*id.* at 104–03); and (6)

3   attorney fees (*id.* at 104).

4        As discussed in the Court's previous Order dismissing Plaintiff's SAC (ECF No.

5   44), Plaintiff's request for injunction prohibiting future disciplinary action and

6   reinstatement of his California medical license qualifies as prospective relief.  Plaintiff's

7   request for expungement of record of discipline also qualifies as prospective relief.  *See*

8   *Allford v. Barton*, No. 1:14-CV-00024-AWI, 2015 WL 2455138, at *10 (E.D. Cal. May

9   22, 2015) ("Likewise, when an employee seeks injunctive relief to expunge past violations

10   from the employee's record, this prevents future harm to the employee and is also

11   considered prospective injunctive relief that is not barred by the Eleventh Amendment.")

12   (citing *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007)).  However, Plaintiff's request

13   for a declaration of his rights is properly classified as seeking retrospective relief and is

14   thus barred by the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v.*

15   *Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (The *Ex parte Young* exception to Eleventh

16   Amendment immunity "does not permit judgments against state officers declaring that they

17   violated federal law in the past.") (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)).  Here,

18   in essence, Plaintiff's fifth request for relief seeks a declaration that Defendants' past

19   actions violated the Constitution by denying him procedural due process.  Plaintiff also

20   seeks "retrospective injunctive monetary relief since March 3, 2006 to September 24, 2012

21   in an amount of U.S. $ 1.5 Million per year or according to proof at trial."  (Compl. at 103,

22   ECF No. 102.)  The Eleventh Amendment bars such relief.  *See Edelman v. Jordan*, 415

23   U.S. 651, 651 (1974) (holding the Court of Appeals, which awarded only prospective relief,

24   erred by "not preclude[ing] retroactive monetary award on the ground that it was an

25   'equitable restitution,' since that award, though on its face directed against the state official

26   individually, as a practical matter could be satisfied only from the general revenues of the

27   State and was indistinguishable from an award of damages against the State").  This

28

analysis extends to Plaintiff's claim against Defendants Kirchmeyer and Levine.  (*See also* ECF No. 59.)

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's "official capacity" claim against Defendants Sewell, GhanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Shipske, Wright, Yaroskavsky and Yip based on Eleventh Amendment immunity.

### E.      Failure to State a Claim Under 42 U.S.C § 1983

The Court next addresses Defendants' arguments in the alternative related to the sufficiency of Plaintiff's Section 1983 claim.   Section 1983 creates the cause of action under which Plaintiff may seek to hold state officials liable for constitutional violations. *See* 42 U.S.C. § 1983; *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010).  To state a claim under Section 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Defendants argue that Plaintiff's FAC does not meet either requirement.  The Court has already determined that Plaintiff has sufficiently stated a claim for violation of Fourteenth Amendment due process under Section 1983 against Defendants Levine, Kirchmeyer and Whitney to survive a motion to dismiss.  (*See* ECF No. 59 at 11–16; ECF No. 72 at 18.)  The Court has further determined that Plaintiff's claim against Medical Board member Defendants named in *Mir v. Deck* is barred by res judicata.  Accordingly, the Court's analysis is limited to whether Plaintiff has sufficiently alleged non–time–barred facts to state claim for violation of the Fourteenth Amendment under Section 1983 against current Medical Board member Defendants, assuming immunity does not bar Plaintiff's claim.

Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of*

32

*Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).   A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.   *Leer*, 844 F.2d at 633.   The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.   *Id.*   A supervisor may be liable under Section 1983 upon a showing of "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."   *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Defendants argue that the FAC "does not state how, if at all, these moving Defendants personally acted to deny him due process or equal protection" and that Plaintiff has failed to state a claim for violation of procedural due process.   (Mot. Dismiss at 17, ECF No. 131.)   Plaintiff responds that the FAC's factual allegations "are exactly the same as the third amended complaint which survived a motion to dismiss except it only adds certain defendants who worked alongside the original Defendants in the third amended complaint to injure Plaintiff."   (Opp'n at 5, ECF No. 137.)

Plaintiff is correct that the Court has already determined that Plaintiff has sufficiently alleged due process violations to state a Section 1983 claim against Defendants Kirchmeyer and Levine to survive a motion to dismiss.   (*See* ECF No. 59 at 11–16; ECF No. 74 at 18.)   With respect to current Medical Board Defendants, however, Plaintiff has failed to sufficiently state a claim under Section 1983 to survive a motion to dismiss on his allegations of due process violations.   Plaintiff's only references to the current Medical Board member Defendants are that they are "currently enforcing the illegal 2010 Decision placing Plaintiff on probation and 2012 Default Decision by Defendant Whitney revoking

for not completing the illegal probation" (FAC ¶ 395, ECF No. 131) and in the Prayer section for injunctive relief.  No other allegation mentions any of the current Medical Board Defendants by name or otherwise indicates how these Defendants were "personally involved" in the allegations that give rise to Plaintiff's FAC—namely the actions resulting in and the revocation of his medical license.; nor does Plaintiff identify the actions taken by the current Medical Board members enforcing the allegedly wrongful decision to revoke Plaintiff's license made by these members' predecessors.  Accordingly, the Court finds that the allegations as alleged in the FAC fail to state a claim under Section 1983 against current Medical Board member Defendants and **GRANTS** Defendants' motion to dismiss.

## F.    Lack of Subject Matter Jurisdiction Under Health Care Quality Improvement Act (HCQIA)

As part of his "Jurisdictional Allegations," Plaintiff states he brings this action pursuant to § 42 U.S.C. § 11112 and 42 U.S.C. § 1983.  (FAC ¶ 69, ECF No. 102.)  Plaintiff then alleges that "Defendants took the action [bad faith administrative proceedings] without proper investigation, declining to meet and confer with experts and without reasonable belief that the action was in the furtherance of quality health care, without reasonable effort to obtain the facts of the matter, adequate notice and hearing procedures are (sic) afforded to the Plaintiff or after such other procedures as are fair to the physician under the circumstances as required pursuant to § 42 U.S.C. § 11112."  (*Id.* ¶ 393.)  Defendants argue that Plaintiff's sole claim for permanent injunction pursuant to § 42 U.S.C. § 11112 is not cognizable because the HCQIA is inapplicable to Defendants.  (Mot. Dismiss at 14–15, ECF No. 131.)

The HCQIA represents Congress's effort to address on a national level the movement of incompetent physicians from state to state by providing for "effective professional peer review."  *Williams v. Univ. Med. Ctr. of S. Nevada*, 688 F. Supp. 2d 1111, 1133 (D. Nev. 2010) (citing 42 U.S.C. § 11101(3)).  The underlying purpose behind HCQIA is to "restrict the ability of incompetent physicians to move from State to State

without disclosure or discovery of the physician's previous damaging or incompetent performance." *Lie v St. Joseph Hosp.* (1992, CA6 Mich) 964 F.2d 567, 1992–1 CCH Trade Cases ¶ 69833 (quoting from the Congressional findings incorporated into the HCQIA at § 11101).

Peer review is a process by which physicians, typically those on staff at a particular hospital, examine the professional practices and performance of their fellow colleagues at that hospital to judge their competency. 121 A.L.R. Fed. 255 (Originally published in 1994). The review usually consists of an examination of the records and files of surgeries and procedures performed by other physicians in search of erroneous diagnoses, unnecessary procedures, and the like. *Id.* Based on their review, participants make recommendations to the hospital's governing body to reinstate or to deny hospital staff privileges, or suggest disciplinary measures that may be appropriate if the performance of the physician being reviewed is substandard or dangerous to patients. *Id.*

Section 11112 entitled "Standards for professional review actions" provides, in part:

(a) In general
    For purposes of the protection set forth in section 11111(a) of this title, a professional review action must be taken—
      (1) in the reasonable belief that the action was in the furtherance of quality health care,
      (2) after a reasonable effort to obtain the facts of the matter,
      (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
      (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112.

The term "professional review action" is defined as "an action or recommendation of a *professional review body* which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician . . . and which affects (or may affect) adversely the clinical privileges, or

35

membership in a professional society, of the physician." 42 U.S.C.A. § 11151(9) (West). The term "professional review activity" is defined as "an activity of a health care entity with respect to an individual physician—(A) to determine whether the physician may have clinical privileges with respect to, or membership in, the entity, (B) to determine the scope or conditions of such privileges or membership, or (C) to change or modify such privileges or membership. *Id.* § 11151(10). The term "professional review body" is defined as "a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity. *Id.* § 11151(11). The term "health care entity" includes (i) a hospital licensed to provide health care services; (ii) an entity that provides health care services and follows a formal review process; and, at issue here, (iii) a professional society (or committee thereof) of physicians or other licensed health care practitioners that follows a formal peer review process for the purpose of furthering quality health care (as determined under regulations of the Secretary). *Id.* § 11151(4A).

Defendants argue that the term "health care entity" that functions as a professional review body does not include the Medical Board or its members. (Mot. Dismiss at 15, ECF No. 131.) The Court agrees and Plaintiff fails to provide any authority to the contrary, yet alone any case in which a medical board or its members have been sued pursuant to the HCQIA. Section 11151(4A) specifies a health care entity includes "a professional society . . . *of physicians or other licensed health care practitioners*." *Id.* § 11151(4A) (emphasis added). Members of the California Medical Board are not required to be physicians or licensed health care practitioners. *See* CAL. BUS. & PROF. CODE § 2001 (only requiring that the Medical Board consist of "15 members, 7 of whom shall be public members" without reference to members' professional background). Although not defined, the term "peer review process" also suggests review by other physicians or health care professionals. Further, while the purpose of the HCQIA is to further the quality of health care (*id.*

§ 11151(4A)), the Medical Board's "highest priority" is "protection of the public" (Cal. Bus. & Prof. Code § 2001.1), a related but different purpose.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim to the extent it is premised on jurisdiction under 42 U.S.C. § 11112.

### G.    Leave to Amend

The complaint will be dismissed without leave to amend.  Futility alone can justify the denial of a motion for leave to amend.  *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir.2004) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995)).  For the reasons discussed above, amendment would be futile in this case.

After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party.  Fed. R. Civ. P. 15(a).  Amendment under Rule 15(a) is discretionary, and is generally permitted with "extreme liberality." *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). When a district court has already granted leave to amend, its discretion in deciding subsequent motions to amend is "particularly broad." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999).  "[A] district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir.2006); *see also Chodos*, 292 F.3d at 1003 ("When considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic."); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The factors are not of equal weight.  "Prejudice to the opposing party is the most important factor," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); delay alone is

insufficient to deny leave to amend.  *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973)).

Here, Plaintiff has clearly put forth his best effort at articulating his claim in a sprawling 105–page FAC.  Plaintiffs' FAC details all of the facts alleged to be relevant to his claim.  Plaintiff has filed a total of five complaints in the instant action.  (*See* ECF Nos. 1, 8, 44, 61, 102.)  The Court granted Plaintiff an opportunity to amend his TAC to add additional parties in this action, which resulted in the current operative FAC.  (*See* ECF No. 100.)  Moreover, the instant action arises out of the same incident and set of facts as its earlier case *Mir v. Deck* (Case No. SACV12-0-01629 RGK (SH)), in which the court's Order Granting Defendants' Motion to Dismiss with prejudice is on appeal with the Ninth Circuit.  (*See* RJN, Exs. 1–3, ECF No. 88.)  In *Mir v. Deck*, Plaintiff filed an initial complaint and a first amended complaint.  (*See id.*, ECF Nos. 1, 6.)  Thus, there have been seven separate complaints arising out of the same incident and set of facts—the proceedings leading up to and the revocation of Plaintiff's medical license.

Plaintiff has had ample opportunities to adequately plead his claims.  The Court finds that leave to amend would be futile in these circumstances and **GRANTS** Defendants' motion to dismiss without leave to amend.

//
//
//
//
//
//
//
//
//
//

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**. (Mot. Dismiss, ECF No. 131.) Specifically, the Court:

(1)   **GRANTS** Defendants' motion to dismiss Plaintiff's "individual capacity" Section 1983 claim against Defendants Kirchmeyer, Whitney, Levine, Sewell, GnanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Schipske, Wright, Yaroslavsky, Yip, Aristeiguita, Alexander, Corday, Duruisseau, Moran, Gitnick, Salomonson, Wender, Zerunyan, Chang, Esrailian, and Low; and

(2)   **GRANTS** Defendants' motion to dismiss Plaintiff's "official capacity" Section 1983 claim against Defendants Sewell, GnanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Schipske, Wright, Yaroslavsky, and Yip.

The Court previously determined that Plaintiff has sufficiently stated a claim for violation of the Fourteenth Amendment under Section 1983 against Defendants Kirchmeyer and Levine to survive a motion to dismiss. (*See* ECF No. 59 at 11–16.) Thus, what remains is Plaintiff's Section 1983 claim for prospective relief (as defined above) against Defendants Kirchmeyer and Levine in their official capacities only.

**IT IS SO ORDERED**.

Dated:  May 11, 2016

Hon. Gonzalo P. Curiel
United States District Judge