UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JEHAN ZEB MIR,

Plaintiff,

v.

KIMBERLY KIRCHMEYER et al.,

Defendants.

Case No.:  12–cv–2340–GPC–DHB

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

[ECF Nos. 255, 266]

Presently before the Court are (1) Plaintiff Jehan Zeb Mir's Motion for Summary Judgment and (2) Defendants' Motion for Summary Judgment or, in the Alternative, Motion for Summary Adjudication filed by Defendants Kimberly Kirchmeyer and Sharon Levine, M.D. in their official capacities.  The Parties have fully briefed the motions.  (*See* ECF Nos. 255, 260, 266, 280, 282, 286.)  Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.   For the reasons set forth below, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion.

1

# I. PROCEDURAL HISTORY

On September 25, 2012, Plaintiff ("Dr. Mir"), proceeding *in propria persona*, filed this lawsuit in federal court alleging the Medical Board of California ("Medical Board") wrongfully took disciplinary actions against Plaintiff's physician's and surgeon's certificate. (ECF No. 1.) On January 17, 2013, Plaintiff filed a First Amended Complaint seeking injunctive and declaratory relief. (ECF No. 8.) The First Amended Complaint named Defendants Medical Board of California; Linda Whitney, Executive Director; and Sharon Levine, M.D., President. (*Id.*)

Defendants then filed a motion to dismiss Plaintiff's First Amended Complaint, (ECF No. 13), and Plaintiff filed a motion for preliminary injunction. (ECF No. 17.) On March 19, 2013, the Court denied Plaintiff's motion for preliminary injunction. (ECF No. 23.) On May 2, 2013, Plaintiff filed a motion for reconsideration of the Court order denying Plaintiff's motion for preliminary injunction. (ECF No. 26.) On May 8, 2013, the Court granted Defendants' motion to dismiss Plaintiff's First Amended Complaint and denied Plaintiff's motion for reconsideration, but granted Plaintiff leave to amend his complaint. (ECF No. 28.)

On December 31, 2013, Plaintiff filed a Second Amended Complaint ("SAC"), *nunc pro tunc* to December 24, 2013, against Defendants Kimberly Kirchmeyer, Interim Executive Director and Deputy Director of the Medical Board of California; Linda K. Whitney, Executive Director; and Sharon Levine, M.D., President. (ECF No. 44.) On February 21, 2014, Defendants filed a motion to dismiss Plaintiff's SAC. (ECF No. 50.) On May 30, 2014, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's SAC, and granted Plaintiff leave to amend his complaint. (ECF No. 59.)

On July 11, 2014, Plaintiff filed a Third Amended Complaint ("TAC"). (ECF No. 61.) He again named as Defendants Kimberly Kirchmeyer, Interim Executive Director, Deputy Director, and Executive Director of the Medical Board of California, in her personal and official capacities; Linda K. Whitney, Executive Director, in her personal

2

capacity; and Sharon Levine, M.D., President, in her personal and official capacities. (*Id.*) On August 8, 2014, Defendants filed motions to dismiss the second claim in Plaintiff's TAC, which challenged the constitutionality of California Business and Professions Code section 2337 and the associated California Court of Appeal Rules, and motion to strike Plaintiff's TAC. (ECF No. 65.) On November 3, 2014, the Court granted Defendants' motion to dismiss without leave to amend and denied Defendants' motion to strike. (ECF No. 72.)

On June 10, 2015, Plaintiff filed an Ex Parte Application to Amend Third Amended Complaint to Add Parties, *nunc pro tunc* to June 8, 2015 (ECF No. 90), which the Court construed as a motion for leave to amend the TAC (ECF No. 91). On September 3, 2015, the Court granted Plaintiff's motion. (ECF No. 100.)

On September 25, 2015, Plaintiff filed a Fourth Amended Complaint ("FAC"). (ECF No. 102.) The FAC named twenty–seven Defendants. On May 11, 2016, the Court granted Defendants' Motion to Dismiss without leave to amend as to (1) Plaintiff's "individual capacity" Section 1983 claims against Defendants Kirchmeyer, Whitney, Levine, Sewell, GnanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Schipske, Wright, Yaroslavsky, Yip, Aristeiguita, Alexander, Corday, Duruisseau, Moran, Gitnick, Salomonson, Wender, Zerunyan, Chang, Esrailian, and Low; and (2) Plaintiff's "official capacity" claim against Defendants Sewell, GnanaDev, Pines, Bholat, Bishop, Hawkins, Krauss, Lewis, Schipske, Wright, Yaroslavsky, and Yip based on Eleventh Amendment immunity. (ECF No. 159.) Thus, the only remaining claim is Plaintiff's Section 1983 claim for prospective relief against Defendants Kirchmeyer and Levine in their official capacities only. (*Id.* at 39.)

On June 2, 2017, Plaintiff filed his Motion for Summary Judgment, which included his Statement of Undisputed Facts. (ECF No. 255.) On June 22, 2017, Defendants filed their Response to Plaintiff's Motion for Summary Judgment, a Response to Plaintiff's Statement of Undisputed Facts, a Request for Judicial Notice in Opposition to the

3

Plaintiff's Motion for Summary Judgment, and a Request for an Evidentiary Ruling on Specified Objections. (ECF Nos. 260-63.) On July 18, 2017, Plaintiff filed a Reply. (ECF No. 280.) On July 6, 2017, Defendants filed their Motion for Summary Judgment. (ECF No. 266.) On August 4, 2017, Plaintiff filed his opposition to Defendants' Motion for Summary Judgment. (ECF No. 282.) Plaintiff filed a response to Defendants' Separate Statement of Facts on August 8, 2017 *nunc pro tunc* to August 7, 2017. (ECF No. 285.) On August 18, 2017, Defendants filed a reply. (ECF No. 286.) This Court consolidated these cross motions for summary judgment and set a September 22, 2017 hearing on both. (ECF No. 271.)

## II.   BACKGROUND

As set forth in the Court's previous orders, this action arises out of Plaintiff's challenges to the Medical Board's decision to revoke his medical license. Plaintiff was licensed by the State of California in 1972 as a Doctor of Medicine and Surgery. (ECF No. 29-21 at 135.)[1] On June 8, 2000, Plaintiff admitted an 81–year old female patient ("G.F.") to the San Antonio Community Hospital in Upland, California. (ECF No. 262-15 at 2.) Plaintiff transferred the patient to Pomona Valley Hospital ("PVH"), where Plaintiff was a provisional member of the medical staff working under active members of the staff. (*Id.*; ECF No. 29-15 at 25.) Plaintiff performed a series of surgeries on the patient, leading to an above–the–knee amputation of the patient's leg due to gangrene the patient had contracted following previous surgeries performed by Plaintiff. (ECF No. 29-21 at 136.) Related to Plaintiff's treatment of the patient and other concerns about the Plaintiff's performance as a provisional staff member, PVH suspended Plaintiff's vascular surgery privileges around November 2000. (ECF No. 29-37 at 95.)

Defendants' actions against Plaintiff commenced on July 16, 2003, when Defendants

---

[1] Page number citations such as this one are to the page numbers reflected on the Court's CM/ECF system and not to page numbers assigned by the parties.

filed an Accusation against Plaintiff for misdiagnosis, negligence, improper transfer, and failure to document in connection with his care of G.F. (ECF No. 29-18 at 52-60.) The Accusation was based in part on expert opinions provided by Dr. Joshua Bardin and Dr. Kenneth Deck, which followed their thorough review of investigation reports, medical records, and surgery reports. (ECF No. 29-15 at 42-49; 54-65). Plaintiff received a 13-day state administrative hearing before an administrative law judge ("ALJ") of the Office of Administrative Hearings that was held on October 18, 20, 21, 2004, November 8, 9, and 10, 2004, and March 7, 8, 9 and 10, and April 4, 5, 6, 2005, with a telephonic conference on May 11, 2005 (ECF Nos. 29-22 at 14; 262-1 at 2-4, 29-27 at 16 – 29-39 at 185). At the administrative hearing, Dr. Mir was represented by counsel, witnesses testified under oath, and a transcript was produced as a result of the hearing. (ECF No. 29-27 at 16 – 29-39 at 185.)

During the course of the hearing on November 8, 2004, the Medical Board added charges of fabricating documents ("documentation" charges) and dishonesty in a First Amended Accusation against Plaintiff. (ECF No. 29-13 at 98-109.) On April 6, 2005, the last day of the hearing, the Board filed a Second Amended Accusation ("SAA") alleging that Plaintiff had made false statements during the Medical Board investigation interviews and/or during the administrative hearing itself including: (1) that the proctor would not allow him to do a femoral-popliteal bypass procedure on June 8, 2000; (2) that the proctor would not allow him to do a femoral-popliteal bypass procedure on June 10, 2000; (3) that there was no gangrene on June 12, 2000; (4) that there was no rigor mortis on June 12, 2000; (5) that the patient's leg was viable on June 12, 2000; (6) regarding the reason for transferring G.F. and (7) that he did not give the patient's family any other reason for the transfer besides the initial hospital being full, when in fact, he stated the transfer was due to insurance reasons. (ECF No. 29-19 at 74-75.) Plaintiff filed an opposition/motion to strike Complainant's SAA on April 21, 2005 (ECF No. 29-19 at 76-84). Douglas Schwab, Dr. Mir's attorney, argued in several pages in that motion that the additional charges would

create a "trial upon a trial" that would prejudice Respondent. (*Id.* at 83.) On May 11, 2005, the parties presented oral argument before the administrative law judge regarding whether the SAA could be filed. (ECF No. 29-39 at 163, 170-177). Dr. Mir's attorney argued at the hearing that Plaintiff was entitled to "notice and opportunity to present his defenses" and requested time to present further evidence on the charges alleged in the SAA. (*Id.* at 175). On May 25, 2005, the ALJ denied Plaintiff's motion to strike the SAA, but granted Respondents' request for additional time to present evidence against the allegations set forth in the SAA. (ECF No. 29-20 at 31-33.) On July 29, 2005, Plaintiff filed a "Witness designation of Jehan Mir, M.D." indicating an intent to oppose the Second Amended Accusation. (ECF No. 29-12 at 111-18). The ALJ denied Respondents' Motion to Call Additional Witnesses on July 29, 2005. (ECF No. 29-20 at 58.) On August 26, 2005, Plaintiff filed his closing brief in the administrative hearing which, among other things, addressed the new charges in the Second Amended Accusation, by challenging the credibility of Medical Board witness Dr. Garg. *See* (ECF No. 29-20 at 72) ("Additionally, the new charges in the Second Amended Accusation that Respondent made false statements . . . are without merit").

On March 3, 2006, the ALJ issued a proposed decision recommending revocation of Plaintiff's license. (ECF No. 29-21 at 134 – 29-22 at 10). Based on this recommendation, the Medical Board issued a decision on May 22, 2006 revoking Plaintiff's medical license, (ECF No. 29-22 at 12-40), to which Plaintiff filed a petition for reconsideration and request for stay of the Medical Board's decision. (ECF No. 29-22 at 41-97).

After hearing oral argument presented from both sides, on December 6, 2006, the Medical Board issued a Decision After Reconsideration revoking Plaintiff's medical license. (ECF Nos. 29-39 at 186-190; 262-1 at 2-4.) The Board allowed Dr. Mir the opportunity to petition for reinstatement of his license in "two years after the effective date of [the] decision." (*Id.*) Following the revocation, on January 9, 2007 Plaintiff filed a writ

of mandamus with the Superior Court of California, Sacramento County challenging the revocation of his license. (ECF Nos. 262-11 at 2-10; 262-12 at 2-59.)

On August 10, 2007, the superior court granted Plaintiff's mandamus petition in part, and remanded to the Medical Board to reconsider a penalty consistent with the superior court's opinion. (ECF No. 17-5 at 30-42). Specifically, the superior court found that there was not sufficient evidence to support the findings that (1) Plaintiff unreasonably delayed treatment by transferring G.F. to another hospital; and (2) an Authorization form was signed by G.F.'s daughter but not by Plaintiff. (ECF No. 17-5 at 32, 37, 39-40.)

With respect to the charges in the SAA, the superior court found insufficient evidence to support any of the SAA allegations except the alleged false statement that the proctor would not allow Dr. Mir to perform a femoral-popliteal bypass procedure on June 10. (*Id*. at 38-40.) As to this statement, the superior court stated that "the weight of the evidence supports the finding that petitioner was untruthful in stating that the proctors refused to allow him to perform a bypass on June 10." (*Id*. at 39.) In addition, the Court observed that in an administrative mandamus action, the superior court could inquire whether there was a fair trial. (ECF No. 17-5 at 37.) The court found that "[p]etitioner ha[d] not persuaded the court that he was denied a fair trial by the amendment of the accusation at the conclusion of the proceedings" where Plaintiff failed to show what additional evidence might have been presented or how it might have changed the outcome. (*Id*. at 37-38.)

In addition, the superior court confirmed the ALJ's findings as to the allegations that were alleged in the original Accusation and the FAA relating to: (1) Plaintiff's misdiagnosis of patient G.F.'s medical condition on June 8, 2000 leading to the wrong surgery; (2) Plaintiff's failure to order an intra-operative or post–operative angiogram to determine the efficacy of surgery; (3) Plaintiff's misdiagnosis on June 10, 2000 leading to the wrong surgery; and (4) failure to document services. (ECF No. 17-5 at 34-36, 39.)

In September 2007, Plaintiff filed a motion for new trial. (ECF No. 266-4 at 2-21),

arguing that the weight of the evidence did not demonstrate that Plaintiff had not made a false statement that his proctor would not allow him to perform the femoral-popliteal bypass procedure; that the Court's findings that Plaintiff made the wrong diagnosis and performed the wrong procedure were not supported by the evidence; that the weight of the evidence did not support did not require Plaintiff to perform an intraoperative or completion angiogram on June 8, 2000, and that the weight of the evidence did not prove that Plaintiffs documentation was inadequate. (*Id*.) The superior court confirmed its original ruling and denied Plaintiffs' motion for a new trial on January 29, 2008. (ECF No. 266-5 at 2-4.) On January 29, 2008, the superior court filed a judgment consistent with its August 10, 2007 ruling, requiring a redetermination of penalty prior to March 25, 2008. (ECF No. 262-16 at 2-4). On February 29, 2008 Plaintiff was served with a notice of entry of judgment. (ECF No. 262-17 at 2-6.)

Plaintiff then filed a petition for writ relief with the California Court of Appeal, pursuant to California Business & Professions Code section 2337, (ECF No. 262-13 at 2-74), which the Court summarily denied on April 4, 2008. (ECF No. 262-18 at 2.)

On June 13, 2008, the Medical Board reissued a Corrected Decision on Remand again revoking Petitioner's license.[2] (ECF No. 262-3 at 3.) Plaintiff again filed a petition for writ of relief with the California Superior Court to set aside and vacate the Plaintiff's penalty, alleging the Medical Board had not reviewed its decision but rather had simply reissued the previous findings. (ECF No. 262-4 at 2.)

On October 17, 2008, the superior court denied Plaintiffs' motion to set aside and vacate the penalty. (ECF No. 262-5 at 4.) The superior court held that Plaintiff's challenges to the factual findings underlying the decision to revoke the license were "amply considered and ruled on in the writ petition and unsuccessfully challenged in the Court of

_____

[2] The Medical Board issued an initial decision on remand on May 28, 2008, but Complainant subsequently filed an application to modify the decision to correct mistakes or clerical errors pursuant to Cal. Gov. Code § 11518.5(a).

8

Appeal. Such matters [had] been finally decided by Judge Ohanesian and the Court of Appeal and [the superior court would] not disturb those rulings." (ECF 262-5 at 4). The Court also rejected plaintiff's assertion that he had been denied due process of law in the writ proceeding or administrative proceeding before the Medical Board, stating that "[w]hile Dr. Mir may disagree with the Court's conclusions, such conclusions appear to have been reached after thoughtful and thorough consideration of the arguments, record, and law." (*Id.* at 4.) The superior court denied a subsequent motion for new trial filed by Plaintiff on January 29, 2009. (ECF No. 262-14 at 2-3).

On April 22, 2009, Plaintiff appealed to the Third District Court of Appeal for a writ of mandate challenging the superior court's order. (ECF No. 17-7 at 7-25). The Court of Appeal directed the superior court to vacate its prior peremptory writ of mandate and to issue a new writ directing the Medical Board to set aside its decision on remand and redetermine the penalty after allowing oral and written argument pursuant to the Administrative Procedures Act and *Ventimiglia v. Board of Behavioral Sciences* 168 Cal. App. 4th 296, 313-314 (2008). (ECF No. 17-7 at 7-25). The Court further stated that "a summary denial of the petition is necessarily on the merits." (ECF No. 17-7 at 22-24) (citing *Leone v. Medical Board of California*, 22 Cal. 4th 660, 664, 670 (2000)), and declined to reconsider its April 24, 2008 decision summarily denying petitioner's first writ of mandate challenging the Board's findings on the false statement and other evidentiary issues.

Following a hearing where both parties were afforded an opportunity for written and oral argument, the Medical Board issued another decision on September 27, 2010, finding "repeated" and "gross negligence" and imposed a five–year probation with various terms and conditions. (ECF No. 17-7 at 27-61.) On November 12, 2010, Plaintiff filed a third writ of mandamus in the superior court challenging the Medical Board's decision. (ECF No. 262-19 at 2-19.) The superior court, on August 24, 2011, mandated the Medical Board

to vacate the probation term requiring Plaintiff to undergo psychiatric evaluation.[3] (ECF No. 262-15 at 12.) The Court agreed with the Board that "[t[he issues previously decided by the Board and sustained by the Court in its January 29, 2008 Judgment in Case No. 07CS00036, [were] no longer open for reexamination." (*Id.* at 7.) The Court noted that it remanded to the Board "only to redetermine the penalty, not to reassess whether grounds for discipline existed." (*Id.*) Further, the Court held that "[p]etitioner's belief that the Court's remand required a new hearing, or reopened the issues previously decided by the Court, is mistaken." (*Id.* at 8.)

On November 3, 2011 the Medical Board filed a Petition to Revoke Probation against Plaintiff. (ECF No. 262-9 at 2-44.) On August 16, 2012, the Medical Board issued a Default Decision and Order setting aside the 2012 Corrected Decision After Remand on the grounds that Plaintiff had violated the terms and conditions of his probation. (ECF No. 262-10 at 2-17). Plaintiff did not file any motion as to the Default Decision and as such on August 16, 2012, the Medical Board revoked Plaintiff's license for the fourth time for not complying with the conditions of probation. (*Id.*) On September 25, 2012, Plaintiff filed the instant action. (ECF No. 1.)

## III.    REQUESTS FOR JUDICIAL NOTICE

Defendants seek judicial notice of twenty-six documents in connection with their Opposition to Plaintiff's Motion for Summary Judgment (RJN, ECF No. 262), and Defendants' Motion for Summary Judgment (RJN, ECF No. 266-3). These documents include pleadings, briefs, and orders filed in Plaintiff's administrative proceedings, in the California Superior Court, and the California Court of Appeal.

Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort

---

[3] On February 15, 2012, the Medical complied with the superior court's order by striking the psychiatric evaluation condition and issuing a Corrected Decision After Remand. (ECF No. 262-8 at 2-36.)

to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed matters of public record), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). A court may take judicial notice of its own files and of documents filed in other courts that are matters of the public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case that bore on whether the plaintiff was still able to assert its claims in the pending case); *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); *Hott v. City of San Jose,* 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of relevant memoranda and orders filed in state court cases).

Plaintiff does not appear to oppose Defendants' request as to Exhibits 1-20, but argues that the vast majority of Exhibits 21-26 are irrelevant and should be disregarded. (ECF No. 283 at 24.) The Court finds that these documents are part of public record and thus their accuracy cannot reasonably be questioned. Further, these documents are relevant to Defendants' collateral estoppel argument and to the merits of Plaintiff's claimed violation of procedural due process. Accordingly, the Court hereby takes judicial notice of Exhibits 1–26. (RJN, Exs. 1–20, ECF No. 262; RJN, Exs. 21-26, ECF No. 266-3.)

## IV.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[W]hen parties submit cross-motions for summary judgment, each motion must be

considered on its merits." *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations and quotation marks omitted). Moreover, "when simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Id.* at 1134.

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). However, the Ninth Circuit has declined to ensure that district courts advise pro se litigants of rule requirements. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-67 (9th Cir. 1986) ("Pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record . . . it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant").

## V.   WHETHER PLAINTIFF IS COLLATERALLY ESTOPPED FROM RELITIGATING CERTAIN ISSUES

Defendants argue that Plaintiff is collaterally estopped from raising the same issues before this Court which were previously raised in his underlying administrative hearing and in his 2007 petition for writ of mandate before the Sacramento County Superior Court. (ECF No. 266-1 at 24-34.) Plaintiff responds that the defendants waived the affirmative defense of collateral estoppel by not raising the issue in their responsive pleadings. (ECF No. 282 at 25.) In addition, Plaintiff argues that Defendants have not produced a sufficient record of the prior proceeding to allow this Court to pinpoint the previously litigated issues. (ECF No. 282 at 23-24) (citing *Gruntal & Co. v. Steinberg*, 854 F. Supp. 324, 337 (D. N.J. 1994; *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321)).

### a. Sufficient Record

As a threshold matter, Defendants have produced a sufficient record of the prior proceedings to allow this court to sufficiently decide the issue of collateral estoppel. Specifically, Defendants have requested judicial notice of twenty-six documents in the public record which span the proceedings before the administrative judge, superior court and appellate court. *See, e.g.*, (RJN, ECF No. 262; RJN, ECF No. 266-3.). *See also* (ECF No. 29) (5883 page Administrative Record). The Court finds that the record of the prior proceedings is sufficient to enable the court to make a collateral estoppel determination as to a number of Dr. Mir's challenges identified below.

### b. Waiver of Estoppel

Preclusion is an affirmative defense, which may be waived if not raised in the initial pleadings. *See* Fed R. Civ. P. 8(c)(1); *Kern Oil v. Tenneco*, 840 F.2d 730, 734 (9th Cir. 1988). The Ninth Circuit has "liberalized" the requirement that affirmative defenses must be raised in initial pleadings and has held that an affirmative defense may be raised in the first instance in a motion for summary judgment if the delay does not prejudice the plaintiff. *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997), *as amended* (May 1, 1997). *See also Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 329 (9th Cir. 1995) (finding preclusion waived only when defendants did not raise the issue in district court or in their appellate briefing); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (preclusion not waived where appellants were not prejudiced by late assertion of preclusion). In fact, the Court may overlook any waiver and raise issue preclusion *sua sponte*. *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 329 (9th Cir. 1995)

As Defendants failed to plead collateral estoppel in their responsive pleadings, the Court must consider whether raising the defense at summary judgment prejudices the plaintiff. Plaintiff has not alleged, let alone shown, any prejudice or unfair surprise, arguing only that "[d]efendants have a long history of delay, harassment, or dilatory

13

moves." (ECF No. 282 at 25.) Further, Plaintiff was given an opportunity to present his arguments against preclusion in his Opposition to Defendants' Motion for Summary Judgment. (ECF No. 282 at 23-26.) As such, the Court finds that plaintiff has not been prejudiced by Defendants' late assertion of the collateral estoppel affirmative defense. While the Court admonishes Defendants for failing to timely plead the affirmative defense, it finds that Defendants have not waived their collateral estoppel argument by failing to assert the affirmative defense in their Answer.

### c. *Utah Construction* Fairness

Federal common law rules of preclusion extend to state administrative adjudications of legal and factual issues, so long as the state proceeding satisfies the requirements of fairness outlined in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966). *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994), as amended (Dec. 27, 1994). These requirements are (1) that the administrative agency act in a judicial capacity; (2) that the agency resolve disputed issues of fact properly before it; and (3) that the parties have an opportunity to litigate. *Id.* at 1033. We are required to give "preclusive effect, at a minimum, to the fact-finding of state administrative tribunals." *Miller*, 39 F.3d at 1032. A federal court should ordinarily give preclusive effect when the state court would do so. *Miller*, 39 F.3d at 1033.

Plaintiff erroneously argues that *Utah Construction* is limited to the particular federal statute involved in that case and does not give preclusive effect here because "[t]here is no Wunderlich Act of 1954 applicable here to give preclusive effect to administrative findings." (ECF No. 282 at 46.)

### i. Administrative Agency Acting in a Judicial Capacity

The Medical Board's 2006 Decision involved a 13-day state administrative hearing held before a neutral decision maker with each party represented by counsel. (ECF No. 29-27 at 16; 29-39 at 185.) These proceedings allowed both Dr. Mir through his attorney and the Medical Board the opportunity to call witnesses who testified under oath and were

14

subjected to cross examination, and to present evidence, and were reported so that a verbatim hearing transcript was produced. (ECF No. 29-27 at 16.) The Court concludes that this hearing before an administrative judge regarding medical license revocation involved an administrative agency acting in a judicial capacity. *See Utah Construction*, 384 U.S. at 422; *Mason v. Arizona*, 260 F. Supp. 2d 807, 826 (D. Ariz. 2003) (holding that state chiropractic board acted in a judicial capacity under *Utah Construction* factors).

### ii. Agency Can Resolve Disputed Issues of Fact Properly Before it

The Medical Board properly resolved disputed issues of fact in its proceedings. For example, on March 3, 2006, Administrative Law Judge Vallera J. Johnson issued a proposed decision detailing her factual findings and recommending the revocation of Plaintiff's medical license. (ECF No. 29-21 at 134.) The ALJ made specific credibility determinations in making her factual findings. *See, e.g.*, (ECF No. 29-21 at 138) ("Considering the facts in the foregoing paragraphs, Dr. Bardin's testimony and opinions are determined to be more trustworthy and reliable). *See also id.* (finding Dr. Mir "not credible or reliable as a witness" as he was "intentionally inconsistent and untruthful regarding significant issues" in the case). Consequently, the ALJ was capable of "resolv[ing] disputed issues of fact properly before it." *See Utah Construction*, 384 U.S. at 422.

### iii. Parties Have Had an Adequate Opportunity to Litigate

Dr. Mir has had ample and adequate opportunity to litigate his claims. Plaintiff, who was represented by counsel, was afforded extended and numerous hearings, written briefing, and oral argument to litigate his claims. Plaintiff was able to challenge the Medical Board's revocation proceedings repeatedly in the superior court, (ECF No. 262-11 at 2-10), to file motions for a new trial, *see, e.g.*, (ECF No 262-21 at AG318-337), and to appeal his case before the Third District Court of Appeal. *See, e.g.*, (ECF No. 17-7 at 7-25.) Moreover, Plaintiff's extensive litigation in this case has been productive—through litigation he successfully challenged a number of ALJ determinations made against him

and obtained the right to apply for reinstatement two years after the revocation, and even obtained a stay of the revocation based on a five-year probationary period. (ECF Nos. 29-39 at 186-190; 262-1 at 2-4; ECF No. 17-7 at 27-61.)

Defendants have met the *Utah Construction* fairness factors allowing administrative proceedings to have preclusive effect in this Court. Next, the Court analyzes which issues are collaterally estopped taking guidance from California's preclusion law.

### d. Collateral Estoppel[4]

28 U.S.C. § 1738 directs a federal court to refer to the preclusion law of the State in which judgment was rendered. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80 (1984).

Collateral estoppel, under California law, precludes relitigation of an issue previously adjudicated when: (1) the issue sought to be precluded must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; and (4) the decision in the former proceeding must be final and on the merits; (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Schmidt v. County of Nevada*, 808 F. Supp. 2d 1243,

_____

[4] Defendants request the court to sustain several evidentiary objections and to strike evidence contained in the Declaration of Jehan Zeb Mir in Support of Motion for Summary Judgment at (1) page 2, paragraph 2; (2) page 2, paragraph 3; (3) page 2, paragraph 4; (4) page 3, paragraph 6, (5) page 3, paragraph 7; (6) page 3, paragraph 8; (7) page 3, paragraph 10. (ECF 263 at 1-3.) Defendants further object to the entirety of the Declaration of Jehan Zeb Mir in support of opposition to Defendants' Motion for Summary Judgment/Summary Adjudication, paragraphs 1-44 and (2) the entirety of the Declaration of Vincent Rowe in support of Plaintiff's motion for summary judgment and in opposition to Defendants' motion for summary judgment. (ECF No. 286-2.) Because the Court has decided that Dr. Mir is collaterally estopped from relitigating the merits of his license revocation proceeding, the Court **DENIES** the requests to strike as moot.

1249 (E.D. Cal. 2011) (citing *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513 (2009)).

### i. Issues Identical to Those Decided in the Former Proceeding

Defendants argue that plaintiff is estopped from relitigating factual findings made by the ALJ and affirmed in the 2008 Superior Court Decision including whether (1) plaintiff correctly diagnosed patient G.F. in June 2000 with thromboembolism, (2) the Medical Board produced false testimony, including false testimony by his proctor, Dr. Garg, (3) that the Medical Board did not prove documentation charges, and (4) that the Second Amended Accusation was false and never litigated. (ECF No. 255 at 3-4.) Plaintiff attempts to argue that the "issue in the FAC is constitutional violation of due process under Section 1983. This issue was not subject of administrative hearing, was not litigated or decided." (ECF No. 282 at 38.) However, these are the same issues that Dr. Mir is attempting to bring up in this instant Section 1983 action and cannot be relitigated.[5] *See, e.g.*, (ECF No. 255 at 9) (Plaintiff's MSJ arguing that the three critical issues are: (1) "One Wrong Diagnosis of Thromboembolism"; (2) "Making one false statement during interview/hearing"; (3) "Documentation Findings Inserted into Decision"). Thus, Plaintiff is collaterally estopped from relitigating these factual findings which have been repeatedly affirmed by the Medical Board, Superior Court, and Court of Appeals.

### ii. Issues Actually Litigated and Necessarily Decided in the Former Proceeding

The parties presented testimony, documentary evidence, and briefing on the issues described above. (ECF Nos. 29-27 at 16; 17-3 at 45.) For example, Plaintiff was allowed

---

[5] Plaintiff argues that certain issues arising after the initial decision are not precluded, (ECF No. 282 at 38-39), including "(1) Disobedience of the January 29, 2008 Judgment, Writ and order of the state-court; (2) Disobeying the February 22, 2010 writ and order of the state court of appeals 3rd; (3) Unlawful probation in 2010; (4) Filing without Notice and without cause Petition to Revoke Probation; (5) Holding hearing post third remand from state-court without Notice; (6) Revoking probation and medical license without Notice or Hearing in 2012." Defendant is not collaterally estopped from asserting these facts as they necessarily would not have been decided in the former proceeding.

to present ample evidence and testimony in defense of his argument that he correctly diagnosed G.F. *See, e.g.*, (ECF No. 29-1 at 2-9) (listing exhibits used in Medical Board proceeding). Plaintiff does not identify relevant evidence that was excluded or was not considered. With regard to Dr. Mir's assertions that he did not litigate issues asserted at the last minute in the Medical Board's SAA (Dr. Garg's false testimony, insertion of documentation charges, and other charges from the SAA), Plaintiff had the opportunity to litigate these issues in a motion to strike the Second Amended Accusation, (ECF No. 29-19 at 76-84), in a Motion to Call Additional Witnesses, (ECF No. 29-20 at 58), and most notably in his closing brief. (ECF No. 29-20 at 72) ("Additionally, the new charges in the Second Amended Accusation that Respondent made false statements . . . are without merit"). The ALJ considered these issues and made factual findings that Plaintiff: (1) failed to properly diagnose and perform the correct surgery on June 10, 2000; (2) failed to adequately and accurately document the services he provided to the patient between June 8 and 14, 2000; (3) made false statements at his medical board interview that the proctor would not allow him to do a femoral-popliteal bypass on June 10, 2000. (ECF 29-22 at 26, 32, 35). Thereafter, the superior court sustained these ALJ findings. (ECF 17-5 at 32, 37, 39, 40). Thus, these issues were actually litigated, were decided by the Medical Board, and were affirmed by the superior court.

### iii. Decision in the Former Proceeding is Final and on the Merits

A ruling in a judicial proceeding is appealable when the trial court orders a final judgment. Cal. Code. Civ. Proc § 904.1(a). This general rule applies in administrative mandamus proceedings. *Dhillon v. Muir Health*, 2 Cal. 5th 1048, 1049 (2017). The general test to determine whether a trial court's order is final and appealable is that if no issue is left for future consideration by the court except the fact of compliance or noncompliance with the terms of the first decree, that decree is final and not deemed interlocutory. *Id.* However, "[u]nder California law, . . . a judgment is not final for purposes of [preclusion] during the pendency of and until the resolution of an appeal." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006).

On August 10, 2007, the superior court found that some of the Medical Board's findings were not supported by the weight of the evidence and, further, remanded for the Board to redetermine a penalty. (ECF No. 17-5 at 41.) On February 29, 2008 Plaintiff was served with the Notice of Entry of Judgment which made the August 10, 2007 order final and appealable. (ECF No. 262-17 at 2-6). The Third District Court of Appeal summarily denied Plaintiff's petition for writ of mandate on April 24, 2008, thus making final any of the Medical Board's factual findings from its 2006 decision that were not found insufficient by the superior court. (ECF No. 262-18 at 2.). The Medical Board issued a Corrected Decision on Remand on June 13, 2008 stating that Dr. Mir's license should be revoked. (ECF No. 17-5 at 48.) In September, 2008, Plaintiff filed a motion to set aside and vacate the penalty in the superior court. (ECF No. 262-4 at 2-20).

Defendants argue that the state court's 2008 judgment based on its August 2007 Ruling was a final judgment on the merits. (ECF No. 266-1 at 24.) Plaintiff argues that the 2008 judgment was interlocutory because the 2008 decision did not determine any penalty. (ECF No. 282 at 26.) While Plaintiff correctly noted that the 2008 judgment was remanded to the Medical Board to redetermine the issue of penalty,[6] the decisions of the California courts are clear that the factual findings in this case were settled and entitled to preclusive effect. The Third Circuit Court of Appeal, specifically found that the state court's 2008 judgment was a final judgment on the merits. *See* ECF No. 17-7 at 23 ("Where, as here, a writ petition is the only authorized mode of review, a 'summary denial of the petition is necessarily on the merits.") (*citing Leone v. Medical Board of California*, 22 Cal. 4th 660, 664, 670 (2000)). Accordingly, when the court of appeal summarily denied the writ of mandate, the judgment—with regard to the findings that survived the superior court's decision—was final upon the resolution of that appeal which addressed those factual findings. *See Sosa*, 437 F.3d at 928. Further, in a October 17, 2008 hearing, the state court held that challenges to factual findings underlying the

---

[6] Plaintiff himself stated that the 2010 remand was "limited to re-determination of penalty i.e. not to make any findings" (ECF No. 255 at 21.)

19

revocation had been "amply considered and ruled on and unsuccessfully challenged in the Court of Appeal. Such matters [had] been *finally* decided . . . and the Court of Appeal [and the superior court would] not disturb those rulings." (ECF No. 262-5 at 4.) Thus, the superior court indicated that there was a final judgment sufficient to provide preclusive effect. *See also Dhillon*, 2 Cal. 5th at 1053 (holding that superior court remand to an administrative body was final "once the trial court issued the writ" and when "nothing remained to be done in that court"). Accordingly, the Court concludes that the 2008 State Court Judgment was a final judgment on the merits.

### iv. Party Against Whom Preclusion is Asserted is the Same as, or in Privity With, the Party in the Former Proceeding

Under California's collateral estoppel law, "the party *against whom* preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *In re Harmon*, 250 F.3d 1240, 1246 (9th Cir. 2001) (emphasis added). Here, Dr. Mir is the same party as in the former proceedings because he was the Respondent in the underlying 2006 administrative action and was the Petitioner in the 2007 superior court proceedings. Plaintiff erroneously argues that there is no privity because Kirchmeyer and Levine were previously sued in a personal capacity. (ECF No. 282 at 37.) Under California law, whether or not Defendants are in privity with the Medical Board is irrelevant because the inquiry requires the Court to assess only whether Dr. Mir—the party against whom preclusion is sought—"is the same party, or in privity with, the party to the former proceeding."[7] *Harmon*, 250 F.3d at 1246. Accordingly, the Court finds that Plaintiff is the

---

[7] The Court notes that Kirchmeyer and Levine, in their official capacities as Executive Director and President of the Medical Board do appear to be in privity with the Medical Board of California, the Petitioner in the 2006 Administrative Decision because of their close legal relationship as officers of the same government. *See, e.g.*, *Mir v. Bogan*, No. 13 CIV. 9172 PGG, 2015 WL 1408891, at *19 n.11 (S.D.N.Y. Mar. 27, 2015), aff'd, 668 F. App'x 368 (2d Cir. 2016) (finding in related case challenging the revocation of Dr. Mir's New York medical license that Kirchmeyer was in privity with the Medical Board); *Lerner v. Los Angeles City Bd. of Ed.*, 59 Cal.2d 382 (1963) ("the courts have held that agents of the same government are in privity with each other, since they represent not their own rights but the right of the government.").

same party as in the former proceedings.

### v. Conclusion as to Collateral Estoppel

The long history of litigation in this case shows that the California courts would almost certainly have given preclusive effect to the factual findings raised in this case. As such, this Court must give that same preclusive effect under federal law. *Migra*, 465 U.S. at 80 ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). The Court agrees with the superior court that the factual bases of Dr. Mir's revocation had "been finally decided by [the superior court] and the Court of Appeal" and that this court will not "disturb those rulings." (ECF No. 262-5 at 4.) Similarly, Plaintiff's "renewed challenges" to the Medical Board's factual findings cannot be reopened for reexamination. *See* (ECF No. 262-15 at 7.) Put another way, if Dr. Mir had raised a state claim involving these issues, a state court would certainly have found that Plaintiff is precluded from relitigating the factual bases of these issues.

As a result, Plaintiff is collaterally estopped from relitigating factual issues that were decided by the Medical Board that were not later reversed by the superior court. The Court concludes that Plaintiff cannot relitigate the following issues: (1) Plaintiff's misdiagnosis of patient G.F.'s medical condition leading to the performance of the wrong surgeries on June 8 and 10; (2) Plaintiff's failure to adequately document services provided; and (3) Plaintiff's false statement that the proctor would not allow him to do a femoral-popliteal bypass on June 10, 2000.

## VI.  MERITS OF 1983 CLAIM - PROCEDURAL DUE PROCESS

Section 1983 creates the cause of action under which Plaintiff may seek to hold state officials liable for constitutional violations. *See* 42 U.S.C. § 1983; *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). To state a claim under section 1983, a plaintiff must show two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state

law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff must show that Defendants violated a right protected by the Constitution. *Id*. A procedural due process violation requires that plaintiff show (1) a protected liberty or property interest; (2) government deprivation of that interest; and (3) a denial of adequate procedural protections. *Foss v. Nat'l Marine Fisheries Servs.*, 161 F.3d 584, 588 (9th Cir. 1998). Defendants concede that plaintiff has a protected property interest in his medical license and that the Medical Board, a government agency, deprived that interest. *See* (ECF No. 266-1 at 34-35); (ECF No. 260 at 18); *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) (holding that physician has a constitutionally protected property interest in his or her medical license). *See also Mishler v. Nevada State Bd. of Med. Examiners*, 896 F.2d 408, 410 (9th Cir. 1990) (noting professional license is property that cannot be deprived by the government without due process of law); *Greenwood v. Federal Aviation Administration*, 28 F.3d 971, 975 (9th Cir. 1994) (recognizing that an existing license, in contrast to application for a license, is a legitimate entitlement that the government cannot deprive without providing adequate due process).

Plaintiff argues that there is no genuine dispute of material fact that a procedural due process violation occurred because he made the correct diagnosis of thromboembolism, Defendants lacked evidence that plaintiff made a false statement that Dr. Garg would not permit Dr. Mir to perform a bypass procedure, and that Defendants "unlawfully inserted documentation findings into their 2006 decision." (ECF No. 255 at 25, 30-31.) Defendants have shown that there is no genuine dispute of material fact that Plaintiff was provided with adequate procedural protections over the course of a 13-day administrative hearing which was followed by multiple mandamus proceedings before the superior court and appellate court. (ECF No. 266-1 at 39-45.) In contrast, Plaintiff, meanwhile, has failed to identify a genuine dispute of *material* fact that he was denied adequate due process before the deprivation of his medical license.

### a. *Mathews v. Eldridge* Analysis

Courts apply a three-part test to determine whether the government has provided adequate due process as established by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under this test, the Court determines the amount of process due by assessing (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any of additional or substitute procedural safeguards; (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003). Procedural due process is "flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (U.S. 1997).

### i. Private Interest that will be affected by the Official Action

Plaintiff's private interest in having adequate due process before the deprivation of a professional license is unquestionably significant. The Supreme Court has recognized that there is a significant private interest in "retaining employment." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). The Court finds that Dr. Mir has a significant private interest in ensuring that adequate due process was afforded to him. Dr. Mir has practiced since 1972 and was a surgeon certified by the American Board of Surgery and American Board of Thoracic Surgery. (ECF No. 29-21 at 136.) He claims that in September 2000, he had obtained a $600,000 a year IPA contract to perform general, vascular, and thoracic surgeries at the San Antonio and Pomona Valley hospitals. (ECF No. 255 at 28.) The government unquestionably cannot deprive such an important private interest without providing adequate due process of law. *See Jones v. City of Modesto*, 408 F. Supp. 2d 935, 955 (E.D. Cal. 2005) (withholding of massage therapist's license for sixty days was a significant private interest that created a "hardship"); *Zuckerman v. State Bd. of Chiropractic Examiners*, 29 Cal. 4th 32, 43 (2002) ("the right of chiropractors to practice their profession . . . is an interest of great importance.") While the private interest affected

by the government's deprivation is significant, nonetheless, it is merely one factor in the balancing test.

### ii. Risk of Erroneous Deprivation

California's statutory scheme provides an elaborate process for judicial review of the Medical Board's revocation of a medical license. The Medical Board functions under a comprehensive set of regulations, which are codified in the California Code of Regulations and the California Business and Professions Code. Under those regulations, a physician, such as Plaintiff, who is deemed unsuitable to practice medicine in California may request a hearing regarding that finding. Cal. Code Regs. tit. 16, § 1364.30. Moreover, assuming the physician is unsuccessful at the hearing, he or she may thereafter seek further review of the Board's decision in state court. Cal. Civ. Proc. Code § 1094.5. The state court then has authority to thoroughly inquire into the Board's decision, including whether the Board acted within its jurisdiction, whether the Board conducted a fair hearing, and whether the Board's decision resulted in prejudicial abuse of discretion. *Id.* § 1094.5(b). Indeed, when analyzing this statutory scheme in the context of a physician's challenge to the Medical Board's revocation of his medical license, the Ninth Circuit observed that California provides a "meaningful opportunity" for aggrieved physicians to challenge the Medical Board's decisions. *See Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992) (finding that California's "statutory framework provides a meaningful opportunity for [physicians] to present [their] constitutional claims for independent review prior to the Board's decision becoming effective").

California's statutory framework provided Plaintiff the opportunity and means to successfully obtain review of the Board's decisions on multiple occasions throughout the proceedings. Moreover, as described *infra*, Dr. Mir was provided adequate notice and opportunity within the statutory scheme to present his arguments. The Court concludes that the state's discipline and licensing review procedures adequately protect against the erroneous infringement of Plaintiff's property interest in his medical license. This low risk

24

of erroneous deprivation weighs severely against Plaintiff's due process claim.

### iii. Government Interest

The government also has a significant interest in ensuring the quality of health care within the state. *See Olsen v. Idaho State Bd. Of Medicine*, 363 F.3d 916, 924 (9th Cir. 2004) ("[i]n view of the public interest of ensuring quality healthcare, there is a strong need to make certain that Board members can perform [ ] disciplinary functions without the threat of harassment or intimidation."). The Court concludes that Defendants have a strong public interest at stake because deprivation of Dr. Mir's medical license, based upon findings of misdiagnosis of serious medical conditions and dishonesty in documentation, assists in ensuring the quality of the state's healthcare system.

### iv. Balancing

Plaintiff's significant interest in his medical license does not outweigh (1) the low risk of erroneous deprivation from the state's procedures and (2) the state's significant interest in ensuring proper healthcare. California's statutory scheme provided Plaintiff with notice of the government's deprivation of his property right and multiple opportunities to be meaningfully heard on these issues. The multi-level review and statutory scheme ensure that there was a low risk of erroneous deprivation. *See Sheikh v. Med. Bd. of California,* 471 F. App'x 713, 713 (9th Cir. 2012) (finding that district court properly dismissed procedural due process claim because full hearing before an administrative law judge and California statutory scheme under which she was afforded that process provided a meaningful opportunity to be heard). Defendants have shown that there is no genuine dispute as to a *material* fact that Dr. Mir was provided with adequate procedural protections.

### b. Meaningful Opportunity to Be Heard

Furthermore, there is no genuine dispute of material fact that Dr. Mir was provided with adequate procedural process because he was afforded ample opportunity to be heard in a meaningful manner. Consequently, Defendants are entitled to summary judgment

because there was no procedural due process violation.

The base requirement of the Due Process Clause requires that "a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010). Due process does not always require an adversarial hearing, a full evidentiary hearing, or a formal hearing. *Id.* at 1082 (citing *Hickey v. Morris*, 722 F.2d 543, 549 (9th Cir. 1983); *United States v. Clifford Matley Family Trust,* 354 F.3d 1154, 1162 (9th Cir. 2004); *Memphis Light, Gas, & Water Div. v. Craft,* 436 U.S. 1, 16 n.17 (1978) ("The opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances."). The hearing need not even approximate a trial-like proceeding; in fact, it may be "very limited" and still pass constitutional muster. *Brewster v. Board of Educ. of Lynwood*, 149 F.3d 971, 985 (9th Cir. 1998). Nor is the opportunity to cross-examine witnesses mandatory in all cases. *See Brock v. Roadway Express, Inc.,* 481 U.S. 252, 266 (1987) ("as a general rule the employer's interest is adequately protected without the right of confrontation and cross-examination, again so long as the employer is otherwise provided an opportunity to respond at a meaningful time and in a meaningful manner." (internal quotation marks omitted)). Consequently, the due process evaluation is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. at 334 (U.S. 1976). Due process is assessed case-by-case based on the total circumstances. *California ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 711 (9th Cir. 2003). As shown below, Plaintiff has had not presented a genuine dispute of material fact that he was denied adequate procedural protections.

Plaintiff argues primarily (1) that there was no evidence supporting a finding of misdiagnosis of thromboembolism; (2) that he was denied a hearing as to whether he made a false statement as alleged in the Second Amended Accusation; and (3) that Documentation findings were inserted into the Medical Board's Decision without adequate

notice and hearing.  (ECF No. 255 at 9.)

First, the Court has already found that Dr. Mir is collaterally estopped from relitigating factual issues previously decided in his administrative proceedings.  As such, Dr. Mir is estopped from relitigating the finding that he made a wrong diagnosis. Moreover, the Court's due process analysis focuses not on whether the Medical Board correctly determined that Dr. Mir made the wrong diagnosis, but whether he was provided sufficient process.  Here, the record is clear that Plaintiff and his attorney were given a multitude of opportunities to present evidence and testimony to support Dr. Mir's defense that he correctly diagnosed G.F.  *See, e.g.*, (ECF Nos. 29-1 at 2-9) (listing exhibits used in Medical Board proceeding); (ECF No. 29-20 at 63-116) (closing brief arguing *inter alia* that Dr. Mir did not misdiagnose patient G.F. with thromboembolism and did not perform the "wrong" procedure on June 10, 2000, and challenging the credibility of the Medical Board's experts).

Second, Plaintiff argues that "[t]he state court let one charge of making false statement unresolved without holding a limited trial or remanding for hearing where Plaintiff never had a hearing and nowhere made the alleged statement let alone falsely unrebutted by Dr. Garg in his testimony at the administrative hearing or at his deposition." (ECF No. 282 at 21.)  On the last day of the administrative hearing, the administrative judge allowed a SAA to be filed and Plaintiff was denied the opportunity to present additional oral evidence on these issues when the ALJ denied Plaintiff's motion to call additional witnesses.  (ECF No. 29-20 at 58-62.)  Instead, Plaintiff was afforded multiple opportunities to address the additional charges, including in his motion to strike the SAA filed on April 21, 2005, ECF No. 29-39 at 76-84, in oral argument before the administrative judge on May 11, 2005, ECF No. 29-39 at 163, 170-77, in his "Witness designation of Jehan, Mir, M.D." filed on July 29, 2005, ECF No. 29-12 at 111-18, and most importantly in Plaintiff's closing brief filed on August 26, 2005 where Plaintiff expressly addressed the charges in the SAA and challenged Dr. Garg's credibility.  *See* (ECF No. 29-20 at 72).

27

There, Plaintiff argued:

> Additionally, the new charges in the Second Amended Accusation that Respondent made false statements in the hearing that the proctors would not agree to proctor a bypass graft on June 8 and 10 and that the patient's foot was viable and not gangrenous on June 12 and that rigor mortis had not set in are without merit.

*Id.* Further, Plaintiff expressly challenged the credibility of Dr. Garg, pointing to the fact that Garg had previously pled guilty to the fraudulent practice of medicine and offering that "Dr. Garg is simply trying to cover up his own potential culpability for the loss of Grace F.'s right foot because of his shortcomings in her treatment." *Id.* Plaintiff's brief shows that he was afforded the opportunity to meaningfully present his argument with regard to the SAA's charges. *See Clifford Matley,* 354 F.3d at 1162 (adequate due process does not require a full evidentiary hearing). While the ALJ found that "[r]espondent made false statements at his Medical Board interview and/or during the administrative hearing in this matter," (ECF No. 29-22 at 5), the superior court, in reviewing Plaintiff's petition for writ of administrative mandate, found in favor of Mir on all of the false statement claims in the SAA, except for the June 10 statement regarding Plaintiff's claim that he was refused permission to perform a femoral popliteal bypass. (ECF No. 17-5 at 37-40.) As to the June 10th statement, the superior court found that Dr. Garg was more credible on this issue given Dr. Mir's inconsistent statements. Moreover, the superior court found that "petitioner has not persuaded the Court that he was denied a fair trial by the amendment of the Accusation at the conclusion of the proceedings" and observed that "petitioner has not shown what additional evidence he might have presented." *Id.* at 37-38.

Third, with regard to the documentation findings, Dr. Mir argues that "Defendants

unlawfully inserted documentation findings into their 2006 decision"[8]  (ECF No. 255 at 31.)  Plaintiff asserts that he was denied notice and an opportunity to have his arguments heard regarding the failure to document charges added in the SAA.  (*Id.*)  However, Plaintiff was afforded ample opportunity to argue extensively in his closing brief regarding these findings. For example, Plaintiff argued that he should not be "subject to discipline for failing on one occasion to enter a progress note."  (ECF No. 29-20 at 110.)  Plaintiff asserted that the failure to enter a progress note was a "simple deviation from the standard of care."  (*Id.*)  Dr. Mir further argued that he did not create a false document with respect to G.F., stating that "such contentions were without foundation" and presented extensive argument on this topic in five pages of briefing that challenged the Medical Board's evidence and the credibility of witnesses. (*Id.* at 112-16.)  Plaintiff argued in a paragraph titled "Alleged Failure to Maintain Adequate and Complete Records" that all other charges regarding inadequate documentation were unsupported.  *Id.* (rebutting the Medical Board's documentation arguments).

The ALJ carefully weighed the facts and even made ten specific findings regarding documentation for which there was insufficient evidence that Dr. Mir had improperly documented the proceedings. (ECF No. 29-22 at 30.) The ALJ took into account Plaintiff's arguments on this issue noting that "[Dr. Mir] testified that he prepared an admission note at or near the time that he examined patient [G.F.] at SACH on June 8, 2000." (*Id.* at 28.) Ultimately, referencing an inadequate June 8, 2000 operative report, a failure to document neurological status on June 9, 2000, a deficient pre-surgical examination on June 10, 2000, and a failure to document patient visit on June 11, 2000, the ALJ found that "[Dr. Mir] failed to adequately and accurately document the services he provided patient [G.F.]

---

[8] Dr. Mir argues that he produced an Admission Note at the SAC Hospital and took the note with him by mistake to save time and not have to rewrite another Admission Note after the transfer to PV Hospital. (ECF No. 255 at 14.)  Defendants' First Amended Accusation accused Dr. Mir of fabricating the Admission Note and making false statements related to the fabrication.  (ECF No. 255 at 15.)

between June 8 and 14, 2000" (ECF No. 29-22 at 31-32.)  The superior court found that "petitioner was not denied a fair trial" and that Dr. Mir "had an opportunity at the hearing to present evidence and arguments on the [documentation] issues." (ECF No. 17-5 at 37.) While Plaintiff may not have persuaded the ALJ or superior court, Plaintiff had a meaningful opportunity to present his argument regarding the documentation findings in briefing and at the hearing.

In his FAC, Plaintiff provided a long list of alleged procedural due process violations including the arbitrary exclusion of evidence; denial of hearings; improper inclusion of a prosecutor in tribunal deliberations; contempt of California Superior Court orders; refusal to consider mitigating evidence; and appointment of biased decision makers sufficient to pass a motion to dismiss.  However, in his motion for summary judgment and in his opposition to the Defendants' summary judgment motion, he has not provided any evidence to create a genuine dispute of material fact that he was denied adequate due process.  (ECF No. 102 at 20-21 n.2.)

Defendants assert that Dr. Mir's "dissatisfaction with the decision rendered against his medical license does not equate with a deprivation of due process." (ECF No. 260 at 23.)  They are correct.  Here, Plaintiff was afforded thirteen days of hearings before an administrative law judge between October 18, 2004, and April 6, 2005.  (ECF No. 29-22 at 14; 262-1 at 2-4; 29-27 at 16.)  Plaintiff was represented by counsel throughout these hearings, presented evidence, and was allowed to cross examine and subpoena witnesses who testified under oath with a verbatim transcript. (ECF No. 29-27 at 16; 29-39 at 6-194.) Adequate procedural due process need not even require an adversarial hearing, approximate a trial-like proceeding, nor even offer the opportunity to cross-examine witnesses.  *See Hickey*, 722 F.2d at 549; *Brewster*, 149 F.3d at 985; *Brock*, 481 at 266. Meanwhile, Plaintiff was afforded a wealth of procedural protections including an adversarial hearing that approximated a trial-like proceeding, the opportunity to call and cross examine witnesses, and the opportunity to make his arguments through extensive

30

written briefing.

In sum, there is no genuine issue of material fact that Plaintiff was afforded adequate procedural protections. As such, Defendants are entitled to judgment as a matter of law and summary judgment is appropriate. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Section 1983 claim based on procedural due process.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment, or in the alternative Summary Adjudication and **DENIES** Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED**.

Dated: September 26, 2017

Hon. Gonzalo P. Curiel
United States District Judge